**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
December 28, 2009

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAMSEY HOLDINGS, INC., | ) | Case No. 09-13998-M |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING AUTOMATIC STAY; AND (IV) SCHEDULING SECOND INTERIM HEARING

Upon the Motions (collectively, the "Motion") dated December 18, 2009 of

Ramsey Holdings, Inc., Ramsey Industries, Inc., Ramsey Winch Company, Auto Crane

Company and Eskridge, Inc., as debtors and debtors in possession (each individually, a "Debtor"

and collectively, the "Debtors") in each Debtor's respective chapter 11 case (collectively, the

"Cases"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States

Code (the "Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for entry of (1) this order (the "Interim Order") (a) authorizing the Debtors

to use Cash Collateral (as hereinafter defined); (b) granting adequate protection; (c) modifying

the automatic stay; and (d) setting a second interim hearing on the Motion, and (2) an order

granting the relief requested in the Motion on a final basis (the "Final Order"); and the Court

having reviewed and considered the Motion, and the proffer of evidence, and a hearing to

consider approval of the Motion on an interim basis having been held and concluded on

December 23, 2009 (the "Interim Hearing"), in accordance with section 363 of the Code and

Bankruptcy Rule 4001; and upon all of the pleadings filed with the Court, and after due

deliberation and consideration and good and sufficient cause appearing therefor:

**BASED UPON THE PROFFER MADE IN OPEN COURT, THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.     Petition Date.  On December 18, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Code.  Each Debtor is continuing in the management and possession of its business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

B.     Committee.  As of the date hereof, no request has been made for the appointment of a trustee or examiner and no statutory committee of unsecured creditors (if formed, the "Committee") has been appointed in the Cases.

C.     Jurisdiction; Core Proceeding; Venue.  This Court has jurisdiction over the Cases, this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Notice.  Notice of the relief sought by the Motion and the Interim Hearing was delivered via facsimile, electronic mail, and/or overnight delivery on or before December 19, 2009 to the following parties-in-interest:  (i) the United States Trustee for this District (the "U.S. Trustee"); (ii) all known secured creditors of the Debtors; (iii) each of the Debtors' twenty (20) largest unsecured creditors; (iv) counsel to the Agent (as hereinafter defined); (v) counsel to AEA Mezzanine Funding LLC, AEA Mezzanine (Unleveraged) Fund LP and AEA Mezzanine Funding B LLC (collectively, "AEA"); and (v) counsel to Gridiron Capital Fund, Gridiron Strategic Advisors and Gridiron Co-Investors (collectively, "Gridiron") (collectively, the "Interim Notice Parties").  The Court concludes that the foregoing notice was sufficient and adequate under the circumstances set forth herein and presented to this Court, and

complies with the provisions of sections 102(1) and 363 of the Code and Bankruptcy Rules 2002, 4001 and 9014, and any other applicable law, and no other further notice prior to entry of the Interim Order is necessary or required.

      E.    <u>Pre-Petition Financing Documents</u>.  Debtor and Lenders have, through counsel, made the following representations to the Court:

      (a)    Pursuant to that certain (y) Credit Agreement, dated as of April 5, 2007 (the "<u>Credit Agreement</u>"), among the Debtors (except Eskridge, Inc.), the lenders party thereto from time to time (each a "<u>Lender</u>" and collectively, the "<u>Lenders</u>") and CIT Lending Services Corporation ("<u>CIT</u>"), as Administrative Agent and Collateral Agent (in each of such capacities, the "<u>Agent</u>"), the Lenders made certain loans up to an aggregate principal amount of $69,000,000 in the form of (i) a term loan in an aggregate principal amount of $59,000,000 and (ii) revolving loans at any time and from time to time during the Availability Period (as defined in the Credit Agreement) in an aggregate principal amount not to exceed $10,000,000 at any time outstanding and (z) First Amendment Agreement, dated as of January 29, 2008 (the "<u>First Amendment</u>"), amending the Credit Agreement to (i) add Eskridge, Inc. as a borrower under the Credit Agreement, and (ii) provide for a new term loan facility in an aggregate principal amount of $10,000,000.  The Credit Agreement, as amended by the First Amendment and as further amended, modified or supplemented prior to the Petition Date, shall be referred to as the "<u>Pre-Petition Credit Agreement</u>."  The Debtors are also obligated pursuant to that certain (I) ISDA Master Agreement dated as of June 13, 2007 (the "<u>2007 Swap Agreement</u>") among the Debtors (other than Ramsey Holdings, Inc. and Eskridge, Inc.) and CIT Group Inc., as amended and supplemented by that certain Schedule to the Master Agreement dated as of June 13, 2007 among the parties to the 2007 Swap Agreement and as further amended and supplemented by

that certain Confirmation of Interest Rate Swap Transaction dated June 21, 2007 among the

parties to the 2007 Swap Agreement and (II) ISDA Master Agreement dated as of January 31,

2008 (the "2008 Swap Agreement", and collectively with the 2007 Swap Agreement, the "Swap

Agreements") among the Debtors and CIT, as amended and supplemented by that certain

Schedule to the Master Agreement dated as of January 31, 2008 among the Debtors and CIT and

as further amended and supplemented by that certain Confirmation of Interest Rate Swap

Transaction dated February 5, 2008 among the Debtors and CIT.

   (b)  The Debtors' obligations under the Pre-Petition Credit Agreement

and the Swap Agreements are secured, and otherwise evidenced, by the Financing Documents

(as such term is defined in the Pre-Petition Credit Agreement, and shall include, without

limitation, the Swap Agreements) (the "Pre-Petition Financing Documents").  Pursuant to the

Pre-Petition Financing Documents, the Debtors granted first priority liens and continuing pledges

and security interests in substantially all of their assets (the "Pre-Petition Collateral") to and/or

for the benefit of the Agent and Lenders to secure the Pre-Petition Obligations (as hereinafter

defined) and any guarantees thereof (collectively, the "Pre-Petition Liens").  For the avoidance

of doubt, the term "Pre-Petition Collateral" shall refer to any Pre-Petition Collateral provided

under any Pre-Petition Financing Documents that existed as of the Petition Date together with all

pre-petition and to the extent applicable, pursuant to section 552 of the Code, all post-petition

proceeds, products, offspring, rents, issues and profits thereof or therefrom (collectively, as used

hereinafter, "Proceeds").

   (c)  As of the Petition Date, each of the Debtors was jointly and

severally liable to the Agent and the Lenders, in respect of loans made, letters of credit issued,

obligations under swap agreements, or other financial accommodations made to the Debtors

under the Pre-Petition Financing Documents in the aggregate principal amount of not less than $70,815,825 (plus accrued and unpaid pre-petition interest, fees, costs and other expenses) (including, without limitation, professional fees and expenses) (collectively, with all other Obligations (as such term is defined in the Pre-Petition Financing Documents), the "Pre-Petition Obligations").

        (d)    **Nothing contained in this Interim Order shall be deemed to be a finding of this Court regarding the amount or validity of the Pre-Petition Obligations or the Pre-Petition Liens.  The Court has received no evidence on these issues as of the date of the entry of this Interim Order.**

        F.    [Paragraph Intentionally Omitted]

        G.    [Paragraph Intentionally Omitted]

        H.    [Paragraph Intentionally Omitted]

        I.    Cash Collateral.  The Agent's "cash collateral," as that term is defined by section 363(a) of the Code shall include any and all pre-petition cash collateral, and subject to section 552 of the Code, all Proceeds (collectively, the "Cash Collateral").

        J.    Agent's Consent.  The Agent is willing to consent to the Debtors' use of the Cash Collateral and the granting of the Adequate Protection Liens (as hereinafter defined) but only to the extent provided in the Budget (as hereinafter defined) for the duration of the Interim Order and solely pursuant to the terms and conditions set forth in this Interim Order.  In the event of any conflict between the terms and provisions of this Interim Order and the Pre-Petition Financing Documents, the terms and provisions of this Interim Order shall control.

        K.    Good Faith.  Debtor, through counsel, represents to the Court that the use of Cash Collateral as provided in this Interim Order has been negotiated at arm's length and in

"good faith" with all parties represented by experienced counsel, is fair and reasonable under the circumstances, is for reasonably equivalent value and fair consideration, is enforceable in accordance with their terms, and is in the best interests of the Debtors, the chapter 11 estates of the Debtors (the "Estates") and their creditors.

    L. <u>Cause Shown</u>.  Debtor and the Lender have represented to the Court that:

    (a) The Debtors have an immediate and critical need to use the Cash Collateral to continue to operate their business, and effectuate a reorganization or sale of their businesses.  Among other things, entry of this Interim Order will avoid immediate and irreparable harm to Debtors and their Estates that would otherwise result if the Debtors were prevented from using Cash Collateral on an interim basis, and is in the best interests of, the Debtors, their creditors and their Estates and all parties in interest in the Cases.

    (b) The ability of the Debtors to have sufficient available sources of working capital to continue their businesses, to attempt to effectuate a reorganization or sale of their businesses and to attempt to maximize the value of their assets depends upon the Debtors' use of Cash Collateral.

    (c) The immediate entry of this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors and their Estates.  The terms of the Debtors' use of the Cash Collateral (i) are fair and reasonable; (ii) reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties; (iii) constitute reasonably equivalent value and fair consideration for the Agent's agreement and consent thereto; and (iv) are necessary, essential and appropriate for the continued operation and management of the Debtors' businesses and the preservation of their assets and properties.

M.     <u>Factual Findings and Conclusions of Law</u>.  **All findings of fact and conclusions of law are made for the purposes of this Interim Order only and shall have no preclusive effect in any other contested matter, or adversary proceeding before this Court or litigation in another court of competent jurisdiction.  (Inserted by Judge Michael).**

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     <u>Motion Granted</u>.  The Motion shall be and hereby is granted on the terms and conditions set forth herein.

2.     <u>Objections Reserved</u>.  Any Objection to the relief sought in the Motion is reserved and deferred until the hearing on a Second Interim Order and/or the Final Order.

3.     <u>Authorization to Use Cash Collateral</u>.  The Debtors are hereby authorized to use Cash Collateral for the period of time from the date of entry of this Interim Order until the earlier January 6, 2010, or the Termination Date (as hereinafter defined), solely as provided in this Interim Order and the Budget.  From and after the Petition Date to the Termination Date, all Proceeds of the Collateral (as hereinafter defined), including, without limitation, all of the Debtors' existing or future cash and Cash Collateral, shall not, directly or indirectly, be used to pay expenses of the Debtors or to make debt payments (except as set forth in this Interim Order) or otherwise disbursed except (i) for those disbursements set forth in the Budget, and (ii) for any fees payable pursuant to 28 U.S.C. § 1930, any fees payable to the Clerk of this Court or the U.S. Trustee.  On or after the Termination Date, the Debtors shall not be permitted to use Cash Collateral, except to fund the Carve-Out (as hereinafter defined).

4.     <u>Budget</u>.  The Debtors shall not make disbursements in excess of those projected in the three (3) week budget attached as <u>Exhibit A</u> hereto (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the terms of this

Interim Order, the "Budget") and shall not otherwise deviate from the terms of the Budget

(including without limitation the payment limitations by line item category, amount and payment

period set forth therein; provided, however, that (i) at the end of each month, the Debtors' cash

disbursements shall not exceed, on a line item by line item basis, one hundred fifteen percent

(115%) of the Debtors' budgeted cash disbursements set forth in the Budget for such line item,

(ii) collections generated in the ordinary course of business in each month (or such shorter period

since the commencement of the Cases) may not be more than 15% lower than the amount of

Total Sources (as defined in the Budget) set forth in the Budget for such period, and (iii) monthly

net sales prior to intercompany eliminations (as set forth in the daily shipment report dated as of

the last day of each fiscal month) generated in the ordinary course of business in each month (or

such shorter period since the commencement of the Cases) may not be more than 15% lower

than the amount of Monthly Net Sales (as defined in the Budget) set forth in the Budget for such

period.  For avoidance of doubt, the Agent's consent to the Budget is only through the

Termination Date notwithstanding that the Budget may include periods ending after the

Termination Date.  Under no circumstances shall any of the professionals retained by the

Debtors or any Committee and approved by the Court pursuant to sections 330 or 331 of the

Code (collectively, the "Professionals") be paid from Cash Collateral during the period of this

Interim Order.  The Debtors shall prepare and furnish to the Agent, in form and substance

reasonably satisfactory to the Agent a weekly report of sales, receipts, disbursements and a

reconciliation of actual collections, shipments (sales), expenditures and disbursements with those

set forth in the Budget, on a line-by-line basis showing any variance to the proposed

corresponding line item of the Budget (the "Budget Reconciliation").  Such updated Budget

Reconciliation shall be provided to the Agent so as actually to be received within three (3) days

following the end of each immediately preceding week.  The Agent and Lenders shall have no duty to monitor such compliance and shall not be obligated to pay (directly or indirectly from the Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget.

       5.       <u>Termination Events</u>.  The Debtors' use of Cash Collateral pursuant to this Interim Order, and the consent of the Agent to the use of Cash Collateral, shall, in addition to being superceded by the entry of a Final Order, immediately and automatically terminate (except as Agent may otherwise agree in writing in its sole discretion), and subject to paragraphs 3 and 4 above, upon the earliest to occur of the following (each, a "<u>Termination Event</u>"):

(a)     If the Final Order, in a form satisfactory to the Agent, has not been entered on or before January 31, 2010;

(b)     the date this Interim Order ceases to be in full force and effect;

(c)     the date on which any Debtor fails to (i) comply with any of the terms or conditions of this Interim Order and/or (ii) observe or perform any of the terms or provisions contained herein or the Pre-Petition Financing Documents (as amended by this Interim Order, or any other order of the Court, and excluding compliance with any financial covenants);

(d)     the date that any Debtor shall seek any modification, supplement or extension of this Interim Order without the prior written consent of the Agent;

(e)     **deleted by Judge Michael;**

(f)     the entry of an order of any court reversing, staying for a period in excess of fourteen (14) days, vacating, rescinding or otherwise modifying in any material respect the terms of this Interim Order;

(g)     **deleted by Judge Michael;**

(h)     the commencement of any action by any Debtor against the Agent or any Lender with respect to the Pre-Petition Financing Documents or the Pre-Petition Obligations, including, without limitation, any action to avoid or subordinate any Pre-Petition Obligations or any Pre-Petition Liens securing any Pre-Petition Obligations or, in the case of any such action commenced by any

person other than a Debtor, the Court enters an order granting any such relief and any such order is not subject to a stay;

(i)    without the consent of the Agent, any order shall be entered granting relief from the automatic stay under section 362 of the Code to the holder or holders, other than the Agent, of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like), possession, set-off or any similar remedy with respect to any Collateral or assets of the Debtors with an aggregate value in excess of $25,000;

(j)    except as may be specifically permitted by this Interim Order, any "first day" order or subsequent order of this Court (all as reviewed by the Agent and included in the Budget), any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness of payables of a Debtor;

(k)    the failure by any Debtor to deliver to the Agent any of the documents or other information required to be delivered pursuant to, or make any payments to the Agent required under, this Interim Order;

(l)    the date on which any of the Cases are dismissed or converted to a case under chapter 7 of the Code or any Debtor shall file a motion or other pleading seeking the dismissal of any of the Cases pursuant to section 1112 of the Code or otherwise;

(m)    the date on which a trustee under chapter 11 of the Code, a responsible officer or examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in sections 1106(a)(3) and (4) of the Code) under section 1106(b) of the Code shall be appointed or elected in any of the Cases; or

(n)    the date on which any material provision of this Interim Order shall cease to be valid and binding on any Debtor, or any Debtor asserts the same in any pleading filed in any court.

On and after the occurrence of (y) a Termination Event specified in clauses (a) and (b), (d) through (j) and (l) through (n) above, the Debtors' authority to use Cash Collateral under this Interim Order shall terminate immediately, all without further order or relief from the Court, and the Debtors shall immediately cease using Cash Collateral, and (z) any other Termination Event, on the second (2nd) business day after the date on which the Debtors receive

written notice from the Agent of such Termination Event, the Debtors' ability to use Cash Collateral under this Interim Order shall terminate immediately, all without further order or relief from the Court, and the Debtors shall immediately cease using Cash Collateral (in each case in (y) and (z) above, the date of such immediate termination being referred to as the "Termination Date").  All notices set forth in this paragraph shall be provided to the Debtors, counsel for the Debtors, counsel for the Committee, counsel for AEA, counsel for Gridiron and the U.S. Trustee.

      6.      [Paragraph Intentionally Omitted]

      7.      Adequate Protection.

      (a)      Proceeds of Pre-Petition Collateral.  To the extent provided by section 552 of the Code, all Proceeds of the Pre-Petition Collateral are subject to the Agent's Pre-Petition Liens, pursuant to the Pre-Petition Financing Documents, and shall also be subject to the Adequate Protection Liens.

      (b)      Replacement Liens.  In addition to all existing security interests and liens granted to the Agent for the benefit of the Lenders in and to the Pre-Petition Collateral, as further adequate protection for the Debtors' use of Cash Collateral on the terms and conditions of this Interim Order, but only to secure an amount equal to the Collateral Diminution (as hereinafter defined), and as an inducement to the Agent to permit the Debtors' use of Cash Collateral as provided in this Interim Order, subject and subordinate to the Carve-Out, the Debtors hereby grant to the Agent for the benefit of itself and the Lenders: pursuant to sections 361(2) and 363(e) of the Code, automatically and retroactively effective as of the Petition Date, valid, binding and properly perfected post-petition security interests and replacement liens on, all Collateral (the "Adequate

Protection Liens").  As used in this Interim Order, the following terms shall have the

following meanings:

> (i)    "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Agent's interest in the Pre-Petition Collateral from and after the Petition Date for any reason including, without limitation, depreciation, sale, loss or use of the Pre-Petition Collateral, including Cash Collateral, whether in accordance with the terms and conditions of this Interim Order or otherwise;

> (ii)    "Collateral" shall mean all of the Collateral (as defined in the Pre-Petition Financing Documents) owned by the Debtors and shall include (a) all of the Debtors' respective real and personal property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired or created by the Debtors, and all proceeds, rents or profits thereof, including all of the Pre-Petition Collateral, Proceeds and the Cash Collateral and (b) excluding, for purposes of this Interim Order, all avoidance actions under chapter 5 of the Code ("Avoidance Actions)  and the proceeds thereof.

Except as set forth in the Budget or any order of the Court, Collateral may not be transferred,

sold, hypothecated or otherwise disposed of or encumbered without the granting of a

replacement Adequate Protection Lien on an indubitable equivalent that is not already pledged to

the Agent.  The Agent at its option may release at any time from its liens and security interests

any assets determined by the Agent to have a risk of environmental liabilities which the Agent in

its sole discretion deems unacceptable.

> (c)    Superpriority Claim.   To the extent that, notwithstanding the provision of paragraph 7(b), the protection provided in the Interim Order does not provide adequate protection of the Agent's valid, enforceable and unavoidable interests in the Collateral, the Agent is hereby granted for the benefit of itself and the Lenders, in each of the Debtors' Cases, an allowed, superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Code in an amount equal to the amount of any Collateral Diminution.  The Superpriority Claim shall be subject and subordinate to the Carve-Out but shall otherwise be entitled to priority over every other claim allowable under section 507(a)(1) of the Code.

(d)      Information and Access.  Without limiting the rights of access and information afforded the Agent under the Pre-Petition Financing Documents, the Debtors shall provide the Agent and its representatives reasonable access to their properties, records and officers and professionals and shall deliver to the Agent (i) the Budget Reconciliation as described in paragraph 4 hereof, (ii) on or before the 25th day of the successive month, monthly operating reports reflecting revenues and expenditures, and (iii) the Key Operational Indicators report each day and the Daily Cash Summary Report weekly, and (iv) such other financial reports and information as are required or requested by the Agent, including, without limitation, information with respect to weekly shipments, backlogs and other information in the form and manner provided to the Agent prior to the Petition Date.

8.      Perfection of Liens.  All liens on and security interests in the Collateral granted to the Agent by this Interim Order shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Code, (i) the Agent may, in its sole discretion, file or record or cause the Debtors to execute, file or record, at the Debtors' expense, such UCC financing statements or other third party consents  or perfection documents as Agent may require, and (ii) the Agent may require the Debtors to deliver to the Agent any chattel paper, instruments or securities evidencing or constituting any Collateral of the Agent, and the Debtors are directed to cooperate and comply therewith, with all such landlord or warehousemen lien waivers or other third party consents, financing statements or similar documents or taking possession deemed to have been filed or recorded or taken in the Cases as of the Petition Date but with the priorities as set forth herein.  The Agent may, in its sole discretion, file a certified

copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Agent's interests in the Collateral.

9. <u>Priority of Liens</u>**.**  The Adequate Protection Liens shall be a first priority security interest and lien against all of the Collateral of the Debtors that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens and a junior security interest and lien against all of the Collateral of the Debtors that, on or as of the Petition Date, is subject to valid, perfected, and non-avoidable liens.  Except as set forth in this paragraph 9 and the Carve-Out, the Debtors shall be prohibited from incurring additional obligations having priority claims or liens equal to or senior in priority or *pari passu* to the Adequate Protection Liens.  Subject to the Carve-Out, the Adequate Protection Liens shall not be (i) subject or junior to any lien that is avoided and preserved for the benefit of the Debtors' Estates under section 551 of the Code, or (ii) subordinated to or made *pari passu* with any other lien, whether under section 364 of the Code or otherwise.  No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Interim Order.

10. **Deleted by Judge Michael.**

11. <u>Survival</u>.

(a) The provisions of this Interim Order shall not be discharged by and shall survive the entry of any order (i) confirming any chapter 11 plan in any of the Cases (and, pursuant to section 1141(d)(4) of the Code, the Debtors hereby waive such discharge), (ii) converting any of the Cases to a case under chapter 7 of the Code, or (iii) dismissing any or all the Cases, and the terms and provisions of this Interim Order, including, but not limited to,

the financing protections granted hereunder, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall retain their effect as provided by this Interim Order until all obligations of the Debtors pursuant to this Interim Order are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in this Interim Order which survive such discharge by its terms) unless otherwise agreed to by the Agent in writing or otherwise ordered by the Court.

(b)     If an order dismissing any of the Cases under section 1112 of the Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Code) that (i) the Superpriority claim and Adequate Protection Liens granted pursuant to this Interim Order and any subsequent order shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Interim Order and subsequent orders until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Interim Order (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

12.     [Paragraph Intentionally Omitted]

13.     <u>Carve-Out</u>.  Subject to the remaining provisions of this paragraph, Agent's liens on and security interests in the Collateral and its rights to a Superpriority Claim, shall be subordinate and subject only to any unpaid fees payable pursuant to 28 U.S.C. § 1930 and any unpaid fees payable to the Clerk of this Court or the U.S. Trustee (the "<u>Carve-Out</u>").  For the avoidance of doubt, under the terms of this Interim Order, no Cash Collateral may be used to pay any claims for services rendered by any of the Professionals.

14. <u>Covenants</u>.  The Debtors shall timely comply with all of the covenants set forth in the Pre-Petition Financing Documents (as amended by this Interim Order or any other order of the Court, and excluding compliance with any financial covenants); <u>provided</u>, <u>however</u>, that it shall not be a covenant or condition of this Interim Order for the Debtor to cure any preexisting breach of the Pre-Petition Financing Documents which may have occurred prior to the Petition Date.  Nothing in this paragraph shall relieve any Debtor of its duty to comply with all provisions of the Code and applicable non-bankruptcy law.

15. <u>Reservation of Agent and Lender Rights.</u>  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of the Agent or any of the Lenders under the Code or under any non-bankruptcy law, including, without limitation, the right of any of the Agent or Lenders to (i) request termination, lifting or modification of the automatic stay of section 362 of the Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to a case or cases under chapter 7 of the Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), (iii) request additional restrictions upon the Debtors' business activities or use of the Cash Collateral, (iv) request termination or modification of this Interim Order, (v) request additional adequate protection, (vi) propose, subject to the provisions of section 1121 of the Code, a chapter 11 plan or plans, (vii) oppose any request to use Cash Collateral without the consent of the Agent or the Lenders, or (viii) exercise or assert any other rights, claims or privileges (whether legal, equitable or otherwise) of the Agent or any of the Lenders.

16.    <u>Valid and Binding</u>.  This Interim Order shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors and their Estates in accordance with their terms.

17.    <u>No Waiver</u>.  The rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of Agent and Lenders arising under this Interim Order are in addition to, and not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, as pre-petition debtors, under the Pre-Petition Financing Documents.  Furthermore, the failure or delay by the Agent or Lenders to seek relief or otherwise exercise its rights and remedies under this Interim Order shall not constitute a waiver of any of the rights of such party hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtors and/or Collateral.

18.    <u>Successor and Assigns</u>.  Unless otherwise ordered by the Court, the provisions of this Interim Order shall be binding upon and inure to the benefit of each of the Agent, Lenders and Debtors and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtors, their Estates, or with respect to the property of any of their Estates) whether in the Cases, in any successor case, or upon dismissal of any such chapter 11 or chapter 7 case.

19.    [Paragraph Intentionally Omitted]

20.    <u>Effect of Modification of Order</u>.  The Debtors may seek to modify, vacate or amend this Interim Order upon two (2) business days' written notice to Agent.  If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of

this or any other Court, such stay, modification or vacatur shall not affect the validity of any Pre-Petition Obligations outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Pre-Petition Obligations.

21.     [Paragraph Intentionally Omitted]

22.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

23.     <u>Notice of Second Interim Hearing</u>.  The hearing to consider entry of a Second Interim Order before this Court is set for 9:30 a.m. on January 6, 2010 (the "<u>Second Interim Hearing</u>").  The Debtors shall promptly serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order and a notice of the Second Interim Hearing (the "<u>Second Interim Hearing Notice</u>") on the Interim Notice Parties.  Copies of the Motion, this Interim Order and the Second Interim Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid promptly following the receipt of such request.  The Second Interim Hearing Notice shall state that any party in interest objecting to the entry of a Second Interim Order shall file written objections with the Court no later than 4:00 p.m. on January 4, 2010, which objections shall be served so that the same are received on or before such date and time by:  (i) GableGotwals, 1100, ONEOK Plaza, 1100 West 5th Street, Tulsa, Oklahoma 74103, Attn: Sidney K. Swinson, counsel to the Debtors; and (ii) the Office of the Assistant United States Trustee for the Northern District of Oklahoma, 224 S. Boulder, Suite 225, Tulsa, Oklahoma 74103, Attn:  Katherine Vance.

24.     **Deleted by Judge Michael.**

25.     <u>Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

26.     <u>Order Effective</u>.  This Interim Order shall be effective as of the date of signature by the Court.

27.     <u>Modification by the Court</u>.  A proposed version of this Interim Order (the "Proposed Interim Order") was presented to the Court as an agreed order between Debtors and the Agent.  The Proposed Interim Order was first presented to the Court at approximately 2:45 p.m. on Wednesday, December 23, 2009.  The Court does not know whether the Proposed Interim Order has been reviewed by the United States Trustee or any other party.  The Court, after reviewing the Proposed Interim Order, has made significant modifications thereto.  The Court expressly finds that such modifications are necessary and proper to protect the interests of all parties in the case and to preserve the integrity of the Court.  The Court further finds that, to the extent its modifications to the Proposed Interim Order are contrary to the agreement of the parties, they are well within the province of the Court and supersede any agreement of the parties.  While the parties are free to agree to the amount of cash to be used and (subject to proper notice and Court approval) to the manner of adequate protection to be provided, they are not free to invade the province of the Court with respect to findings of fact and conclusions of law, nor are they free to make concessions that serve to the exclusive benefit of a single party, especially upon limited and expedited notice.  This is a court of equity and it will so function.

IT IS SO ORDERED.

Dated: December 28, 2009

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

{852549;3}                                        19

**Exhibit A**

**Budget**

Variables are highlighted in this color

| Ramsey Industries, Inc.<br>19 Day Cash Flow<br>($'s In thousands) | Forecast<br>Wk Starting<br>12/21/2009 | Forecast<br>Wk Starting<br>12/28/2009 | Forecast<br>3 Days ending<br>1/6/2010 | TOTAL<br>Forecast<br>19 Days ending<br>1/6/2010 |
|---|---|---|---|---|
| **Weekly Net REVENUE/Invoicing** | | | | |
| Auto Crane | $      205 | $      314 | $      44 | $      563 |
| Ramsey Winch | 359 | 350 | 61 | 770 |
| Eskridge | 194 | 144 | 27 | 365 |
| InterCompany | (14) | (19) | (3) | (36) |
| Net Sales | $      744 | $      789 | $      129 | $      1,662 |
| | | | | |
| **Beginning Cash (book) Balance:** | $   4,923 | $   5,992 | $   5,244 | $   4,923 |
| **Sources:** | | | | |
| Accounts Receivable Collections | $      832 | $      676 | $      274 | $      1,782 |
| Credit Card/Other | 13 | 13 | 7 | 33 |
| Return of Prefunding of Payroll from ADP | 344 | | | 344 |
| Total Sources | $   1,189 | $      689 | $      281 | $      2,159 |
| | | | | |
| **(Uses):** | | | | |
| Materials | $        50 | $      484 | $      176 | $      710 |
| Utility Deposits | - | 100 | - | 100 |
| General Accounts Payable | 22 | 221 | 92 | 335 |
| MAA Self-insured Medical & Rx | 15 | 75 | 27 | 117 |
| Payroll (Bi-Weekly) | - | 325 | - | 325 |
| Capital Expenditures | 6 | 105 | 18 | 129 |
| 401(k) Transfer to T. Rowe Price/DBRA | 25 | - | 27 | 52 |
| Minimum Pension Plan Contribution - AC | - | - | - | - |
| Minimum Pension Plan Contribution - RW | - | - | - | - |
| Risk Insurance Premiums | - | - | - | - |
| Franchise Taxes | - | - | - | - |
| Operations Total | $      118 | $   1,310 | $      340 | $      1,768 |
| | | | | |
| **Net Change from Operations** | $   1,071 | $      (621) | $      (59) | $      391 |
| | | | | |
| Severance Payments * | $        - | $        - | $        - | $        - |
| Land Acquisition CapEx | - | - | - | - |
| Office Renovation CapEx | - | - | - | - |
| Other CapEx Related to Plant Consolidation | - | 106 | 10 | 116 |
| Expenses for Plant Consolidation | 2 | 21 | - | 23 |
| Severance & Plant Consolidation Total | $        2 | $      127 | $      10 | $      139 |
| | | | | |
| Interest - Senior | $        - | $        - | $        - | $        - |
| Default Interest - Senior | - | - | - | - |
| Interest - SWAPs | - | - | - | - |
| Debt - Senior (Scheduled Debt Principal Pmt) | - | - | - | - |
| Debt - Senior  (Excess Cash Flow Principal) | - | - | - | - |
| Annual Agency Fee - CIT | - | - | - | - |
| Misc/Bank Fees for Commercial Bank Accts. | - | - | - | - |
| Financing Total | $        - | $        - | $        - | $        - |
| | | | | |
| **Net Change:** | $   1,069 | $      (748) | $      (69) | $      252 |
| | | | | |
| **Ending Cash Balance Book Before Onetimes** | $   5,992 | $   5,244 | $   5,175 | $      5,175 |
| | | | | |
| Income Tax Payments (Refunds) | $        - | $        - | $        - | $        - |
| | | | | |
| FA/CRO Fees | $        - | $        - | $        - | $        - |
| Ramsey Legal Fees & UST Costs | - | - | - | - |
| Committee Legal and Advisor Fees | - | - | - | - |
| Total One Time Expenses | $        - | $        - | $        - | $        - |
| | | | | |
| **Ending Cash Balance Book After Onetime Costs** | $   5,992 | $   5,244 | $   5,175 | $      5,175 |

EXHIBIT

A