Interest on amounts outstanding under the Exit Revolving Facility will accrue, and be payable monthly, at the Adjusted LIBO Rate (as defined in the Exit Credit Agreement) plus the Applicable Rate (as defined in the Exit Credit Agreement) of 500 basis points. The Adjusted LIBO Rate will have a floor of two percent (2%). The default interest rate shall be equal to two percent (2%) per annum above the contract rate set forth above. An unused line fee of 25 basis points will be payable monthly in arrears on the undrawn amount of the Exit Revolving Facility.

Attached hereto as Exhibit "A-5" is the Exit Revolving Facility Commitment Letter which sets forth in more detail the principal terms of the Exit Revolving Facility to be entered into by the Reorganized Debtors.

      (iii)    Collateral Security for Exit Term Loan and Exit Revolving Facility.

To secure the Exit Term Loan and the Exit Revolving Facility, on a *pari passu* basis, the Reorganized Debtors will grant the Prepetition Senior Lenders first priority security interests and other Liens in all of the assets of the Reorganized Debtors through the Reorganized Debtors' execution and delivery to the Prepetition Senior Lenders of a security agreement and related documents.

**Section 7.04  Payment of Fees and Expenses.**

The fees and expenses of the following parties-in-interest shall be paid in the amounts, at the times, and in the manner indicated:

**(a)    Debtors.**

To the extent allowed by the Court, the following Non-Ordinary Course Administrative Claims shall be paid, subject to the stated limitations, if any:

      (i)    The Debtors' general bankruptcy counsel, GABLEGOTWALS, shall be paid the lesser of $787,500 or 100% of its allowed fees in two (2) equal installments on (x) the later of the Distribution Date or within five days after such fees and expenses are allowed by the Court (100% of allowed expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date, (II) the Tax Refund Date, provided that if such fees and expenses have not been allowed by either date, within five days after such fees and expenses are allowed by the Court.

      (ii)    The Debtors' other Professionals employed in these Chapter 11 Cases, including David R. Payne & Associates, Koehler & Associates, Inc. and Grant Thorton, shall be paid the full amount of their allowed fees and expenses when and as permitted by the Court.

      (iii)    The Debtors shall pay the allowed fees and expenses of recruitment consultants in connection with their identification of independent members of the New Boards when and as permitted by the Court.

**(b)  Prepetition Senior Lenders.**

The fees and expenses of the Administrative Agent and Exit Agent incurred on or prior to the Effective Date shall be paid by the Debtors, subject to the stated limitations:

(i)  The Debtors shall pay 90% of the fees of the Administrative Agent's and Exit Agent's counsel, Kaye Scholer LLP, in two (2) equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

(ii)  The Debtors shall pay the reasonable fees and expenses of Administrative Agent's and Exit Agent's local counsel, McAfee & Taft, in two (2) equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

(iii)  The Debtors shall pay the Administrative Agent's and Exit Agent's financial consultant, Richter Consulting, the lesser of $685,967 or 100% of its actual fees in two equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

**(c)  Junior Lenders.**

The fees and expenses of the Junior Lender Agent shall be paid by the Debtors, in an amount not to exceed $283,726, as follows (x) 50% on the 120th day following the Distribution Date, and (y) the remainder in 7 equal monthly installments commencing on the date that is 150 days following the Distribution Date.

**(d)  Sponsor.**

The fees and expenses of the Sponsor shall be paid by the Debtors, in an amount not to exceed $486,274, as follows (x) 50% on the 120th day following the Distribution Date, and (y) the remainder in 7 equal monthly installments commencing on the date that is 150 days following the Distribution Date.

**(e)  Creditors' Committee.**

The Allowed fees and expenses of the Professionals of the Committee shall be paid by the Debtors when and as permitted by the Court.

**(f)  Other.**

Directors Expenses shall be payable on the Effective Date up to a maximum amount of $50,000. Directors & Officers Insurance shall be paid by the Debtors and maintained in accordance with past standards, provided that the Debtors shall not incur in excess of $125,000 for tail insurance and such amount shall represent a one-time expenditure.

**Section 7.05    Board of Directors.**

Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed initial director of Ramsey LLC (and, to the extent such Person is an insider of the Debtors, the nature of any compensation to such Person) and the identical Boards of Directors for each of the Reorganized Debtors shall be disclosed in the Plan Supplement (if known by the date the Plan Supplement is filed). The initial Board of Directors of Ramsey LLC and each of the Reorganized Debtors (collectively, the "New Boards") shall consist of seven members: (i) four directors shall be Independent Directors (as defined in the Plan Term Sheet attached hereto as Exhibit "A-2") designated collectively by the Consenting Lenders, (ii) one director shall be designated by the Junior Lenders, (iii) one director shall be designated by the Sponsor, and (iv) one director shall be the Chief Executive Officer of Ramsey LLC. The New Boards shall serve for an initial term of two (2) years. Thereafter, the New Boards will be elected in accordance with the New Entity Documents of Ramsey LLC and applicable non-bankruptcy law.

**Section 7.06    Officers.**

On the Effective Date, the following existing officers of Debtors shall be retained as officers of Reorganized Debtors that continue to exist thereafter, and shall continue to serve until such time as they may resign, be removed or be replaced. Accordingly, the officers of Reorganized Debtors shall be the following as of the Effective Date (these individuals shall also serve as the officers of Ramsey LLC):

| | |
|---|---|
| John R. Celoni, Jr. | President & Chief Executive Officer |
| Don Helms | Chief Financial Officer, Treasurer and Secretary |
| Michael Barber | Chief Operating Officer |

**Section 7.07    Management Incentive Plan.**

On or after the Effective Date, the New Boards of the Reorganized Debtors shall adopt the Management Incentive Plan, pursuant to the terms set forth in the Management Incentive Plan Term Sheet attached hereto as Exhibit "A-6".

**Section 7.08    Other Documents and Actions.**

The Debtors and Reorganized Debtors may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan Term Sheet and the Plan.

**Section 7.09    Revesting of Assets.**

Except as otherwise set forth in the Plan, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, all property of the Estates shall revest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances and other interests. Allowed

Intercompany Interests shall be Reinstated pursuant to Section 3.03(d) of the Plan, and the legal, equitable and contractual rights to which the Holders of such Allowed Intercompany Interests are entitled shall remain unaltered. From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire and dispose of property and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, the Debtors may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### Section 7.10    Preservation of Rights of Action; Settlement.

Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code: (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in the Reorganized Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor the Reorganized Debtors waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Estates. The Reorganized Debtors may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors.

### Section 7.11    Effectuating Documents; Further Reorganization Transactions.

The chairman of the board of directors, president, chief financial officer, manager, or any other appropriate officer of the Debtors or, after the Effective Date, the Reorganized Debtors or Ramsey LLC, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary of the Debtors or, after the Effective Date, the Reorganized Debtors or Ramsey LLC, shall be authorized to certify or attest to any of the foregoing actions.

### Section 7.12    Exemption from Certain Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer from the Debtors to the Reorganized Debtors, Ramsey LLC or any other Person or entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such

tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 7.13   Employee and Retiree Benefits.

The Debtors' Pension Plans consist of the (i) *Ramsey Industries, Inc. Defined Benefit Replacement Allocation Plan (A Defined Contribution Plan)* effective October 1, 2006 ("DBRA Plan"); (ii) *Management Security Plan of Ramsey Industries, Inc. and Subsidiaries*, as amended (the "MSP"); (iii) amended and restated *Auto Crane Company Employees' Retirement Plan* effective January 1, 2003, as amended ("Auto Crane Plan"); and (iv) amended and restated Ramsey Winch Company Employees' Retirement Plan effective January 1, 2003, as amended ("Ramsey Winch Plan").

The Auto Crane Plan and the Ramsey Winch Plan  (collectively, the "Defined Benefit Pension Plans") are defined benefit pension plans that were frozen for new participants and new benefit accruals on September 30, 2006.  These plans are currently underfunded but are not delinquent on any required minimum contributions.  Due to the  freezing of the Defined Benefit Pension Plans, the Debtors created the DBRA Plan, which is a qualified defined contribution plan created under a specific Internal Revenue Service ruling permitting the establishment of this type of plan at the time of a significant curtailment in pension plan benefits (*i.e.*, freezing of the Defined Benefit Plans).  Only employees that were on the payroll as of September 30, 2006 are eligible participants under the DBRA Plan.  The only contributions allowed under the DBRA Plan are from the Debtors and such contributions are made annually under an age-weighted scheme.  The vesting period under the DBRA Plan is five (5) years.

The Debtors also have the Ramsey Industries 401K Savings Plan ("401K Plan").  The 401K Plan is a qualified 401(k) plan open to all full time employees of Ramsey Winch, Auto Crane and Eskridge.  The matching structure is one under safe harbor—100% of the first 3% of employee deferral then 50% of the next 2%. Vesting under the 401K Plan is immediate for both the employee deferral and company match (safe harbor requirement).

Finally, in 1999, Ramsey Industries and its subsidiaries at the time—Auto Crane and Ramsey Winch—established the MSP for the purpose of providing specific benefits to a limited group of management position employees who contributed materially to the continued growth and development of the Debtors.  As part of the MSP, Ramsey Industries created a trust on November 23, 1999 (the "MSP Trust") and designated Bank of Oklahoma, N.A. as the trustee of the MSP Trust (the "MSP Trustee").  The MSP Trust was created to hold assets, subject to the claims of Ramsey Industries' creditors in the event of Ramsey Industries' insolvency, until such assets were paid to the MSP's participants. The MSP Trust is considered an unfunded arrangement providing benefits for select persons under Title I of Employee Retirement Income Security Act of 1974 ("ERISA").   As of the Petition Date, approximately eight active participants and two other inactive participants are entitled to post retirement benefits under the MSP.

On and after the Effective Date, the Reorganized Debtors may honor, in the ordinary course of business, any Benefit Plan except to the extent such Benefit Plan was modified by an order of the Court on or prior to the Effective Date; provided, however, that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

With respect to the Defined Benefit Pension Plans, they shall remain in place in accordance with Section 4.12 of the Plan. Upon confirmation of the Plan, the Reorganized Debtors shall satisfy the minimum funding standards pursuant to section 412 of the Tax Code and section 1082 of Title 29 of the United States Code and administer the Defined Benefit Pension Plans in accordance with their terms and the provisions of ERISA, and the Tax Code. Nothing contained herein or in the Plan shall be construed as discharging, releasing or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, from any liability imposed under ERISA, the Bankruptcy Code, or any related law or regulatory provision with respect to the Defined Benefit Pension Plans or the PBGC. Notwithstanding any provision of the Plan or the Confirmation Order, the PBGC and the Defined Benefit Pension Plans shall not be enjoined or precluded from enforcing such liability.

For the avoidance of doubt, (a) all claims of the Debtors' retirees that constitute "retiree benefits" within the meaning of Bankruptcy Code Section 1114(a) (the "Retiree Benefits") shall continue to be paid in accordance with applicable law and certain operative agreements, including without limitation, (i) the *Merger Agreement among Ramsey Acquisition Corp. and Ramsey Industries, Inc. and all of the Shareholders of Ramsey Industries, Inc.* dated October 27, 1999; and (ii) the *Employment Agreement by and between Ramsey Industries, Inc. and Robert F. Heffron* dated April 5, 2007; (b) each of Reorganized Auto Crane and Reorganized Ramsey Winch will continue to sponsor and maintain its Defined Benefit Pension Plan in accordance with its terms and applicable law; and (c) each of Reorganized Ramsey Industries, Reorganized Auto Crane and Reorganized Ramsey Winch shall continue to honor its obligations under the MSP in accordance with its terms and applicable law. Notwithstanding the foregoing, each Reorganized Debtor reserves its right, if any, after the Effective Date, to terminate, amend or freeze the applicable Retiree Benefits, Pension Plan, or the MSP in accordance with its terms and applicable law.

On the Effective Date, (x) all filed proofs of claim with respect to Retiree Benefits shall be deemed withdrawn, (y) all filed proofs of claim filed by PBGC with respect to the Pension Plans shall be deemed withdrawn, (z) all participant benefits or distributions held by the MSP Trustee of the MSP Trust, as provided in the *Interim Order on Motion for Abatement of Distributions under Management Security Plan* (Doc. No. 295), shall be remitted by the MSP Trustee to the MSP participants and immediately thereafter all filed proofs of claim with respect to the MSP shall be deemed withdrawn.

# ARTICLE VIII.

## VOTING AND CONFIRMATION OF THE PLAN

### Section 8.01   Exclusivity Period.

Section 1121 of the Bankruptcy Code grants a debtor the exclusive right to propose a plan of reorganization during the first 120 days after the commencement of its chapter 11 case. In addition, a debtor has the exclusive right to solicit votes for the acceptance of any proposed plan during the first 180 days after the commencement of its chapter 11 case. The Plan was filed within the first 120 days after the commencement of the Chapter 11 Cases and, therefore, the Plan has been proposed within the exclusivity period provided under Section 1121 of the Bankruptcy Code.

### Section 8.02   Unclassified Claims.

In accordance with Sections 1123(a)(1), 507(a)(2) and 507(a)(8) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in the Plan.

### Section 8.03   Classification of Claims Under the Plan.

Section 101(5) of the Bankruptcy Code defines "claim" broadly as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

In order for the holder of a claim to participate in a plan of reorganization and receive the treatment offered to the class in which it is classified, the claim must be "allowed." A claim is allowed under the Bankruptcy Code if such claim or a portion thereof either:

(i)     has been scheduled in a bankruptcy filing, is not scheduled as disputed, contingent or unliquidated, and is not subject to any pending objection timely filed by any party-in-interest, or

(ii)    has been timely filed by way of a proof of claim with the court; and

(A)    is not subject to an objection filed within any period for objections fixed by the Bankruptcy Code, the Bankruptcy Rules, or an order of the court, or

(B)    the court has allowed the claim despite an objection.

The categories of Claims and Interests set forth in the Plan classify Claims and Interests for all purposes, including for purposes of voting, confirmation and distribution pursuant to the Plan and Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of

such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

The Plan provides for the consolidation of the Estates into a single Estate for all purposes associated with Confirmation and consummation of the Plan. As a result of such consolidation, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

The Plan divides the Claims and Interests against the Debtors into 10 Classes and sets forth the treatment offered each class. Pursuant to Section 1122 of the Bankruptcy Code, claims and interests must be grouped into classes or "classified" under a plan of reorganization. All claims or interests within a particular class must be substantially similar to each other, and must in general receive the same treatment as each other, except to the extent that a particular holder agrees to a less favorable treatment. The Debtors believe the classification of Claims under the Plan is proper under the Bankruptcy Code.

### Section 8.04   Impairment of Claims: Impaired Classes.

The Bankruptcy Code requires that, in order to be confirmed, a plan of reorganization must specify whether a class of claims or interests is "impaired" by its treatment under such plan. A claim or interest is impaired unless the plan

(i)     leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder thereof; or

(ii)    with certain exceptions, cures any default which occurred before or after the commencement of the chapter 11 case, reinstates the original maturity of the claim or interest, compensates the holder for any damages resulting from any reasonable reliance by the holder on a contractual provision or applicable law that permits acceleration of the debt and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Under the Plan, Classes 1, 4, 5, 6, 8, and 10 are Impaired. Of those Classes, Classes 1, 4, 5, 6 and 10 are entitled to vote to accept or reject the Plan.

### Section 8.05   Deemed Acceptance/Rejection of the Plan.

Classes, 2, 3, 7, and 9 are Unimpaired under the Plan and, therefore, are presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. In addition, Class 8 is Impaired, the Holders of Allowed Claims in such Class are deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

### Section 8.06   Voting Classes.

Each Holder of an Allowed or Estimated Claim or Interest in Classes 1, 4, 5, 6 and 10 shall be entitled to vote to accept or reject the Plan.

### Section 8.07   Acceptance by Impaired Classes.

An Impaired Class of Claims or Interests shall have accepted the Plan if (i) the Holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Interests actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Interests actually voting in such Class have voted to accept the Plan.

### Section 8.08   Non-Consensual Confirmation ("Cram Down").

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (i) seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with Article IX of the Plan.  With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

The "cram down" provisions of Section 1129(b) of the Bankruptcy Code permit confirmation of a chapter 11 plan of reorganization in certain circumstances even if the Plan is not accepted by all impaired classes of claims and interests.

### Section 8.09   Modification or Revocation of the Plan; Severability.

Modifications or amendments to a plan's classification system may be made with the Court's approval and may, under certain circumstances, be approved by the Court at the confirmation hearing without re-solicitation of holders of claims and interests who are not materially and adversely affected by any such modification or amendment.  In the event that re-solicitation is required, which would be the case in the event that the modification adversely changes the treatment of the claim of any creditor who has not accepted in writing the modification and whose claim is in a class that must accept the plan in order for it to be confirmed, the plan proponent must make disclosure to holders of claims or interests of such additional adequate information as is necessary to make an informed judgment about the plan as modified.

In the event of an amendment or modification of the classification scheme under the Plan, the Debtors intend to use, to the extent permitted by the Court and the Bankruptcy Code, each acceptance received by the Debtors pursuant to this solicitation for the purpose of obtaining the acceptance of the Class of which a holder of Claims is ultimately deemed to be a member.  It is possible that reclassification of Claims could affect the Classes in which such Claims were initially classified, or another Class under the Plan, by changing the composition of such Classes and the votes of the members thereof required for acceptance of the Plan by such Classes.  A reclassification of Claims after this solicitation could require a re-solicitation of acceptances.

TO THE EXTENT PERMITTED BY THE COURT, THE BANKRUPTCY CODE AND THE BANKRUPTCY RULES, ACCEPTANCE BY ANY HOLDER OF CLAIMS OF THE PLAN PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE THE ACCEPTANCE OF THE PLAN'S TREATMENT OF ANY SUCH CLAIM REGARDLESS OF POSSIBLE RECLASSIFICATION OF THE CLAIM.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and any applicable notice requirements, the Debtors reserve the right, with the consent of the Administrative Agent, on behalf of the Consenting Lenders, Exit Agent and the Junior Lenders, to alter, amend or modify the Plan before its substantial consummation or to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors.

If, prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or the conditions to Confirmation or the Effective Date is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a final judicial determination and shall provide that each term and provision of the Plan as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**Section 8.10   Determination Dates.**

**(a)      Voting.**

For purposes of voting on the Plan, a Claim or Interest is in a particular Class only to the extent that it is an Allowed Claim or Interest in that Class, and has not been paid, released, or otherwise satisfied, before the Voting Record Date.

**(b)      Distribution and Treatment.**

For purposes of distribution and other treatment under the Plan, a Claim or Interest is in a particular Class, only to the extent that it is an Allowed Claim or Interest in that Class, and has not been paid, released, or otherwise satisfied before the Distribution Record Date.

## ARTICLE IX.

## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 9.01    Distributions for Claims and Interests Allowed as of Effective Date.**

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims and Interests that are Allowed Interests as of the Effective Date shall be made on the Distribution Date, or as soon thereafter as practicable. The New Equity Interests to be issued under the Plan shall be deemed issued as of the Effective Date regardless of the date on which the shares or interests are actually distributed.

**Section 9.02    Interest on Claims.**

Unless otherwise specifically provided by the Plan, the Confirmation Order, any other order of the Court, or by applicable bankruptcy law, post-petition interest shall not accrue and shall not be paid on Allowed Claims when due under the contract, agreement, or other instrument governing the terms and conditions of the obligation comprising such Allowed Claim.

**Section 9.03    Disbursing Agent.**

The Disbursing Agent shall make all distributions required under the Plan *except* (i) distributions to the Holders of Allowed Claims in Classes 1 and 5, which distributions shall be deposited with the Administrative Agent, who shall promptly deliver such distributions to the Holders of such Claims in accordance with the provisions of the Plan and the Prepetition Senior Credit Documents and (ii) distributions to the Holders of Allowed Claims in Class 6, which distributions shall be deposited with the Junior Lender Agent, who shall promptly deliver such distributions to the Holders of such Claims in accordance with the provisions of the Plan and the Subordinated Notes.

If the Disbursing Agent is an independent third party designated in the Confirmation Order to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  If so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

**Section 9.04    Record Date for Distributions.**

At the close of business on the Distribution Record Date, the transfer ledgers for the Prepetition Senior Facility Claims, Junior Lien Claims, and Old Common Stock shall be closed, the claims register for transfers of Claims and Interests pursuant to Bankruptcy Rule 3001(e) will also be closed and there shall be no further changes in the record holders of the Prepetition Senior Facility Claims, Junior Lender Claims and Old Common Stock.  None of the Reorganized Debtors, the Disbursing Agent, the Administrative Agent, or the Junior Lender Agent shall have

any obligation to recognize any transfer of such Prepetition Senior Facility Claims, Junior Lender Claims or Old Common Stock occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those Holders stated on the applicable transfer ledgers as of the close of business on the Distribution Record Date.

### Section 9.05    Means of Cash Payment.

Cash payments made pursuant to the Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### Section 9.06    Delivery of Distributions.

Distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent or Administrative Agent, as the case may be, (a) at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or Interest is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent, at the addresses contained in the official records of such agent, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities properly remitted to the Debtors. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent or the appropriate agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions made through the Disbursing Agent or agent shall be returned to the Reorganized Debtors until such distributions are claimed. All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### Section 9.07    Claims Paid or Payable by Third Parties.

### (a)    Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable

Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**(b)    Claims Payable by Third Parties.**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 9.08    Applicability of Insurance Policies.**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

**Section 9.09    Fractional Dollars; De Minimis Distributions.**

Any other provision of the Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded up. The Disbursing Agent or any agent, as the case may be, shall not make any payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to such Disbursing Agent or agent, as the case may be.

**Section 9.10    Withholding and Reporting Requirements.**

In connection with the Plan and all distributions thereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**Section 9.11    Calculation of Distribution Amounts of New Equity Interests.**

No fractional shares of New Equity Interests shall be issued or distributed under the Plan by the Reorganized Debtors, the Disbursing Agent, or the Administrative Agent. Each Person entitled to receive New Equity Interests will receive the total number of whole shares to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of a share, the actual distribution of shares of such New Equity Interests shall be rounded to the next higher or lower whole number as follows: (a) fractions ½ or greater shall be rounded to the next higher whole number, and (b) fractions of less than ½ shall be rounded to the next lower whole number. The total number of shares of New Equity Interests to be distributed to the Holders of Claims in Classes 5 and 6, and Interests in Class 10, shall be adjusted as necessary to account for the rounding provided in the Plan. No consideration shall be provided in lieu of fractional shares rounded down.

## ARTICLE X.

## VOTING PROCEDURES, BALLOTING AND CONFIRMATION HEARING

The following Classes of Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan:

- Class 1 – Prepetition Senior Facility Claims

- Class 4 – General Unsecured Claims

- Class 5 – Unsecured Deficiency Claims

- Class 6 – Junior Lender Claims

- Class 10 – Parent Equity Interests

Holders of Claims in Classes 1, 4, 5, 6 and 10 are requested to complete an appropriate Ballot, in accordance with the instructions provided therewith. Holders of Claims should take care to use the correct Ballot(s) in voting on the Plan. If any Ballots are damaged or lost, or if a Holder has any questions concerning the voting instructions, it may contact GABLEGOTWALS, P.C. (the "Balloting Agent") at the address or telephone number indicated immediately below. Each Holder that holds Claims in more than one Class is required to vote separately with respect to each Class in which such Holder holds Claims. A Holder may not split its vote within a Class of Claims or Interests. Incomplete, unsigned, or otherwise irregular Ballots will be returned to the sender and not tabulated.

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with the Disclosure Statement. No other votes will be counted. A properly completed and executed Ballot must be received no later than 4:00 p.m. Prevailing Central Time on _____, 2010, by the Balloting Agent, at the following address:

GABLEGOTWALS
Attn: Mark D.G. Sanders, Esq.
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma  74103-4217

Ballots must be returned by U.S. mail, hand delivery or overnight mail.  A return envelope will be provided for your convenience.

## ARTICLE XI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 11.01  Assumption/Rejection.

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors *unless* such executory contract or unexpired lease: (a) is identified in a Schedule to be included in the Plan Supplement as a contract or lease being rejected pursuant to the Plan; or (b) is the subject of a motion to reject filed on or before the Confirmation.

### Section 11.02  Pass-Through.

Any rights or arrangements necessary or useful to the operation of the Debtors' business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory contracts not assumable under Section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for the Debtors and the Debtors' counterparty's benefit, unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

### Section 11.03  Assumed Executory Contracts and Unexpired Leases.

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

**Section 11.04 Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.**

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.

**Section 11.05 Assumed Contracts and Leases, and Leases Entered Into After Petition Date.**

Executory contracts and/or unexpired leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, will be performed by the applicable Reorganized Debtor in the ordinary course of business.

**Section 11.06 Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**Section 11.07 Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Section 365(d)(4) of the Bankruptcy Code.

**Section 11.08 Cure Costs.**

Except to the extent different treatment is agreed to among the parties, any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the Debtors' option, by the payment of Cash or distribution of other property as necessary to cure any defaults.  If there is a dispute regarding (i) the nature or amount of any cure, (ii) the Debtors' ability or the ability of the Debtors' assignees to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

# ARTICLE XII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### Section 12.01 Assertion of Claims or Interests.

The Court, by order dated February 12, 2010, has ordered that all Holders of Claims against and/or Interests in the Debtors, other than the Holders of certain Administrative Claims and Rejection Claims, to file proofs of claims or interests on or before March 31, 2010.

### Section 12.02 Objections to Claims or Interests.

From and after the Effective Date, the Debtors and Reorganized Debtors may settle or compromise any Contested Claim/Interest without approval of the Bankruptcy Court. The Debtors also reserve the right to resolve any Contested Claim/Interest outside the Bankruptcy Court under applicable governing law.

### Section 12.03 Estimation of Claims.

Any Debtor or Reorganized Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

### Section 12.04 No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim/Interest have been settled or withdrawn or have been determined by Final Order, and the Contested Claim/Interest, or some portion thereof, has become an Allowed Claim or Interest.

### Section 12.05 Distribution Reserve.

The Disbursing Agent shall withhold the Distribution Reserve from the Cash or other property (other than the Exit Term Loan to be distributed to the Holders of Allowed Claims in Class 1 and the New Equity Interests to be distributed to the Holders of Allowed Claims or

Interests in Classes 5, 6 and 10) to be distributed under the Plan. As to any Contested Claim/Interest, upon a request for estimation by the Debtors, the Bankruptcy Court shall determine what amount is sufficient to withhold as the Distribution Reserve. The Debtors may request estimation for every Contested Claim/Interest that is unliquidated and the Disbursing Agent shall withhold the Distribution Reserve based upon the estimated amount of such Claim or Interest as set forth in a Final Order. No holder of a Contested Claim/Interest shall be entitled to a distribution in excess of the Debtors' estimate of such Contested Claim/Interest unless required by Final Order. If the Debtors elect not to request an estimation from the Bankruptcy Court with respect to a Contested Claim/Interest that is liquidated, the Disbursing Agent shall withhold the Distribution Reserve based upon the Face Amount of such Claim or Interest.

### Section 12.06 Distributions After Allowance.

The Reorganized Debtors or the Disbursing Agent, as the case may be, shall make payments and distributions from the Distribution Reserve to each holder of a Contested Claim/Interest that has become an Allowed Claim or Interest in accordance with the provisions of the Plan governing the Class of Claims or Interests to which such holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Contested Claim/Interest becomes a Final Order, the Disbursing Agent shall distribute to the holder of such Claim or Interest the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim or Interest been allowed on the Distribution Date. After a Contested Claim/Interest is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Contested Claim/Interest, if any, shall become property of the Reorganized Debtors.

### Section 12.07 Prior Payment of Claims.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### Section 12.08 Compliance with Tax Requirements/Allocations.

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all

distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

## ARTICLE XIII.

## FINANCIAL HISTORY AND PROJECTIONS

### Section 13.01 Historical Financial Information.

Audited financial statements of the Debtors for the fiscal years 2006 and 2007, as well as unaudited financial statements for year 2008, are attached hereto as Exhibits "B-1", "B-2", and "B-3", respectively. Financial projections of Reorganized Debtors for the three (3) years following the Effective Date are set forth below in Section 13.01(c). The projected financial information gives effect to the proposed restructuring of the Debtors. Based upon the Debtors' expectations of future financial results of the Reorganized Debtors, the Debtors believe the Reorganized Debtors will be able to make the payments required under the Plan.

*Please be aware that the Debtors will be subject to the fresh-start accounting rules after the Effective Date. Accordingly, the financial condition and results of operating the Reorganized Debtors from and after the Effective Date will not be comparable to the financial condition or results of operations reflected in the Historical Financial Statements. Moreover, Holders of Claims and Interests should not construe anything contained in this Disclosure Statement, including the acknowledgment of the Debtors being subject to fresh-start accounting rules after the Effective Date, as providing any tax advice. Each Holder should consult with its own legal, business, financial and tax advisors with respect to any such matters concerning this Disclosure Statement, including any effect of the Debtors being subject to the fresh-start accounting rules after the Effective Date.*

### (a)   Responsibility for and Purpose of the Projections.

*The Debtors have prepared the projections in consultation with their retained professionals. While all projections are speculative in nature, the projections are based upon existing circumstances and reasonably expected future events.   Statements regarding the Debtors' ability to complete their bankruptcy reorganization proceedings timely, the outcome of the Plan, the Debtors' ability to sustain current operations during the pendency of the reorganization, including their ability to maintain normal relationships with customers, the ability of the Debtors to establish normal terms and conditions with suppliers and vendors, costs of the reorganization process, the adequacy of financing arrangements during the reorganization period, future market prices, operating results, synergies, future operating efficiencies, future government actions and the results of such actions, cost savings and other statements that are not historical facts contained in this Disclosure Statement are forward-looking statements. The words "except", "project", "estimate", "believe", "anticipate", "plan", "intend", "could", "should", "may", "predict" and such similar expressions are also intended to identify forward-looking statements.   Such statements involve risks, uncertainties and assumptions, including, without limitation, the results of the bankruptcy proceedings, court decisions and actions, the negotiating positions of various constituencies, the results of negotiations, market factors, the effect of weather and economic conditions, the ability of the Debtors to realize planned cost*

*savings and other factors detailed herein. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, actual outcomes may vary materially from those indicated.*

For the purpose of demonstrating the feasibility of the Plan, the following financial projections for the three (3) years following the Effective Date ("Projections") were prepared by the Debtors with the assistance of their retained professionals. The Projections reflect the Debtors' most recent estimates of the results of operations, cash flows and financial position of the Reorganized Debtors. Consequently, the Projections reflect the Debtors' judgments as to expectations of market and business conditions, expected future operating performance and the occurrence or nonoccurrence of certain future events, all of which are subject to change.

The Debtors do not, as a matter of course, publish their projections, strategies, or forward-looking projections of the results of operations, cash flows and financial position. Accordingly, the Debtors do not anticipate that they will and disclaim any obligation to, furnish updated projections to the holders of Claims or Interests after the date of this Disclosure Statement, or to include such information in documents required to be filed by any regulatory body or to otherwise make such information public. The assumptions disclosed herein are those that the Debtors believe to be significant to the Projections and are "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

The Projections present, to the best of Debtors' knowledge and belief, the Reorganized Debtors' projected results of operations, cash flows and financial position for the three (3) years following the Effective Date and reflect the Debtors' judgment as of March 23, 2010, the date that the Projections were published by the filing of the initial Disclosure Statement. Although the Debtors are of the opinion that these assumptions are reasonable under current circumstances, such assumptions are subject to inherent uncertainties, including but not limited to, material changes to the economic environment, demand for products, competitive environment, and other factors affecting the Debtors' business. The likelihood, and related financial impact, of a change in any of these factors cannot be predicted with certainty. Consequently, actual financial results could materially differ from the Projections. In connection with the development of the Plan, the Projections have not been audited or reviewed by independent accountants. The Projections assume the Plan will be implemented in accordance with its stated terms and that the Effective Date of the Plan will be on or about July 1, 2010.

The Projections should be read in conjunction with the assumptions and qualifications contained herein.

THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, THE FINANCIAL ACCOUNTING STANDARDS BOARD, OR THE RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION REGARDING PROJECTIONS. FURTHERMORE, THE PROJECTIONS HAVE NOT BEEN AUDITED OR REVIEWED BY A REGISTERED INDEPENDENT PUBLIC ACCOUNTING FIRM.

THE PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH MAY NOT BE REALIZED AND ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES WHICH ARE BEYOND THE CONTROL OF THE DEBTORS. CONSEQUENTLY, THE PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS, OR ANY OTHER PERSON, AS TO THE ACCURACY OF THE PROJECTIONS OR THAT THE PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY DIFFER MATERIALLY FROM THOSE PRESENTED IN THESE PROJECTIONS. HOLDERS OF CLAIMS OR INTERESTS MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS IN MAKING THEIR DETERMINATION OF WHETHER TO ACCEPT OR REJECT THE PLAN.

**(b)     Summary of Significant Accounting Policies and Projection Assumptions.**

The Debtors, with the assistance of their retained professionals, prepared the Projections. The Projections represent, to the best of the Debtors' knowledge and belief, the Debtors' projected results of operations, cash flows and financial position for the three (3) years following the Effective Date and reflect the Debtors' judgment as of the filing of this Disclosure Statement with the Court.

(i)     Accounting Policies.

The Projections have been prepared using accounting policies that are materially consistent with those applied in the Debtors' historical financial statements. The Projections do not reflect the implementation of fresh start accounting pursuant to Statement of Position 90-7 as issued by the AICPA. The Debtors' accountants and advisors are currently reviewing the application, effects and treatment pursuant to SOP 90-7 on the balance sheet at the Effective Date. The Debtors do not believe fresh start accounting will affect the projected net cash flows available to the Reorganized Debtors. Rather, fresh start accounting will principally impact the allocation of Reorganization Value to the principal classes of assets including working capital, property, plant and equipment and intangible assets. The implementation of SOP 90-7, when it is finalized after the Effective Date, is not anticipated to have a material impact on the underlying economics of the Plan.

(ii)     General Assumptions.

*Methodology.*   The Projections were prepared on a consolidated basis for all of the Debtors.

*Tax Structure.*   The ultimate parent of the Reorganized Debtors will be Ramsey LLC and subject to federal and state taxes as such. The Projections do not include a complete tax analysis concerning, among other things, reductions which may be required for tax attributes (carryfowards and tax basis) arising out of application of Section 108 of the Internal Revenue Code.

*Plan Consummation Date.* The Projections assume the Plan will be consummated on or about July 1, 2010. The Debtors do not believe a change in the assumed date of the consummation of the Plan by a few months will materially impact the post-confirmation capital structure or the underlying economics of the Plan.

    (c)    **The Debtors' Projected Reorganization Budget.**

Below is management's plan of reorganization budget for years, 2010 through 2013, and assumes confirmation of the Plan on June 30, 2010. The table includes all amounts to be paid under the terms of the Plan.

| Summary - Plan of Reorganization Budget | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ($000s) | Q1-10 | Q2-10[1] | Q3-10 | Q4-10 | F2010 | Q1-11 | Q2-11 | Q3-11 | Q4-11 | F2011 | F2012 | F2013 |
| Net Sales | $ 13,104 | $ 11,617 | $ 10,852 | $ 11,294 | $ 46,867 | $ 10,925 | $ 11,948 | $ 13,081 | $ 14,339 | $ 50,293 | $ 62,931 | $ 72,384 |
| EBITDAR | $ 1,237 | $ 661 | $ 616 | $ 777 | $ 3,291 | $ 643 | $ 1,143 | $ 1,674 | $ 2,186 | $ 5,645 | $ 10,688 | $ 12,982 |
| Working Capital Changes | (2,624) | 67 | 1,526 | 1,393 | 362 | 1,023 | 965 | 960 | 255 | 3,203 | (1,460) | (2,053) |
| Pension - DBRA Funding | (128) | 38 | (523) | (174) | (787) | (324) | (222) | (222) | (222) | (990) | (1,039) | (1,039) |
| Capex - Consolidation Costs | (194) | (532) | (965) | (899) | (2,590) | (673) | (858) | (225) | (225) | (1,981) | (900) | (900) |
| Income Tax Refunds - (Payments) | 281 | 0 | 3,460 | - | 3,741 | - | - | - | - | - | (1,477) | (3,100) |
| Payment of Pre-Petition A/P | - | - | (3,015) | (426) | (3,440) | (426) | (426) | (142) | - | (993) | - | - |
| Senior Debt Closing Fees | - | - | (350) | - | (350) | - | - | - | - | - | - | - |
| Restructuring Professional Fees | (22) | (274) | (3,258) | (433) | (3,987) | (144) | (144) | (48) | - | (337) | - | - |
| Senior Debt Interest | (11) | - | (520) | (779) | (1,309) | (762) | (774) | (779) | (766) | (3,081) | (2,894) | (2,659) |
| Term Loan Amortization | - | - | - | - | - | (250) | (250) | (250) | (448) | (1,198) | (1,586) | (2,717) |
| Other | - | (145) | 55 | (115) | (202) | (113) | (113) | (176) | (113) | (515) | (511) | (500) |
| Net Cash Flow | (1,461) | (185) | (2,973) | (652) | (5,271) | (1,026) | (679) | 792 | 668 | (245) | 815 | 14 |
| Book Cash, Beginning of Period | 6,042 | 4,581 | 4,396 | 1,423 | 6,042 | 771 | (0) | (0) | (0) | 771 | 526 | 1,341 |
| Borrowing (Payments) on Revolver | - | - | - | - | - | 255 | 679 | (792) | (141) | - | - | - |
| Cash, End of Period | 4,581 | 4,396 | 1,423 | 771 | 771 | (0) | (0) | (0) | 526 | 526 | 1,341 | 1,355 |
| Revolver Balance | $ - | $ - | $ - | $ - | | $ 255 | $ 933 | $ 141 | $ - | $ - | $ - | $ - |
| Excess Funding Availability | $ - | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 2,745 | $ 2,067 | $ 2,859 | $ 3,000 | $ - | $ 3,000 | $ 3,000 |

[1] 6/30/10 Plan Confirmation

    (i)    *Net Sales.* Consolidated net sales are forecasted to be $46,867,000 in 2010 and to increase in 2011, 2012 and 2013 to $50,293,000, $62,931,000 and $72,384,000, respectively. The projected increase is primarily due to (a) the anticipated improvement in the economy, (b) the introduction of new products by the Debtors and (c) improved liquidity and credit available to end users (customers).

    (ii)    *EBITDAR.* EBITDAR is defined as earnings before interest, taxes, depreciation, amortization and rent and is sometimes referred to as operating cash flow. The Debtors have projected their consolidated EBITDAR to be $3,291,000 in 2010 followed by increases in 2011, 2012 and 2013 in the amounts of $5,645,000, $10,688,000 and $12,982,000, respectively. Like net sales, the projected increase is primarily due to the anticipated improvement in the marketplace.

(iii)   *Pension/DBRA Funding.* The Debtors' projected funding for Pension Plans is $787,000 in 2010, and they have projected to increase funding for their Pension Plans for 2011, 2012 and 2013 in the amounts of $990,000, $1,038,000 and $2,053,000, respectively. The projected increases are primarily attributable to curing underfunded obligations under the Pension Plans.

(iv)   *CAPEX.* The Reorganized Debtors have projected capital expenditures and consolidation costs to be $2,590,000 in 2010, $1,981,000 in 2011, and $900,00 for 2012 and 2013. The increase in capital expenditures in 2010 is primarily due to a number of projects undertaken and completed in 2010, including the consolidation of the Ramsey Winch and Auto Crane facilities.

(v)   *Income Tax Refund.* The Debtors anticipate that they will receive a federal income tax refund in the third quarter of 2010 in the approximate amount of $3,460,000. The tax refund is based upon the ability to carry-back certain net operating losses for years prior to the Petition Date.

(vi)   *Payment of General Unsecured Claims (Class 4).* The Debtors have projected $3,015,000 to be disbursed to Holders of Allowed Claims in Class 4 on the Distribution Date. The remaining distributions will be made in 12 equal monthly installments with such amounts totaling $426,000 per quarter (or $142,000 monthly) through June 2011 and a final monthly payment of $142,000 in July 2011. These payments are in satisfaction of the Debtors' obligations to Holders of Allowed Claims in Class 4 and, upon the Debtors' final monthly payment in July 2011, the Reorganized Debtors will have no further liability for Allowed Claims in Class 4.

(vii)   *Exit Credit Facilities' Fees.* As part of the Exit Credit Facilities, the Debtors will be required to pay fees of $350,000 consisting of (y) a $250,000 origination fee payable on the Effective Date to the Exit Term Loan Lenders with respect to the Exit Term Loan and (z) a $100,000 origination fee ($50,000 of which is payable on the Effective Date and the remaining $50,000 payable on the sixth (6th) month anniversary of the Effective Date) payable to the Exit Revolving Lenders with respect to the Exit Revolving Facility. Pursuant to the Administrative Agent Fee Letter, a copy of which is attached hereto as <u>Exhibit "A-7"</u>, the Debtors will also pay a $50,000 annual fee on the Effective Date (and each year thereafter during the term of the Exit Credit Facilities) to the Administrative Agent for the Administrative Agent's services as agent for the Exit Lenders. The Prepetition Senior Credit Agreement included the same $50,000 annual fee for the Administrative Agent.

(viii)   *Fees and Expenses.* The Debtors have projected all professional fees and expenses related to the Debtors' restructuring, including the Chapter 11 Cases, to be $3,987,000 payable in 2010. The $3,987,000 projection shown above includes the following fees and expenses: (i) Debtors: $900,000 for GABLEGOTWALS (counsel), $210,000 for Grant Thorton (accountants), and $107,000 Bill Koehler (bankruptcy accountant); (ii) The Administrative Agent: $685,967 for Richter & Co. (financial consultant), $981,000 for Kaye Scholer (counsel), $207,000 for McAfee & Taft, and; (iii) Sponsor: $423,903 for Gordian Group (financial consultant), $39,614 Finn Dixon &

Herling LLP (counsel), $22,757 for Hall Estill (local counsel); (iv) Junior Lender Agent: $174,133 Morrison & Cohen LLP (counsel) and $109,594 for Crowe & Dunlevy (local counsel); and (v) the Committee: $75,000 for Sneed Land & Herrold (counsel). The Debtors have projected approximately $315,000 in professional fees and expenses to be paid in 2011, which are also attributable to the Debtors' restructuring. Such fees and expenses are more fully described in Section 7.04 hereof. The projected professional fees and expenses are one-time costs, the final payment for which will occur in the third quarter of 2011.

(ix)     *Exit Term Loan Interest and Amortization.*  As more fully described in Section 7.03(c) of this Disclosure Statement, interest on the Exit Term Loan will accrue, and be payable in cash on a monthly basis, at a rate per annum equal to the Adjusted LIBO Rate (as defined in the Exit Credit Agreement) plus the Applicable Rate (as defined in the Exit Credit Agreement) of 400 basis points. The Adjusted LIBO Rate will have a floor of 2%. The default rate of interest will be equal to 2% per annum above the contract rate set forth above. Principal amortization payments under the Exit Term Loan will be made as follows: (i) no amortization during calendar year 2010, (ii) $250,000 on the final day of each quarter of calendar year 2011, (iii) $350,000 on the final day of each quarter of each calendar year 2012; and (v) $500,000 on the final day of each pre-maturity quarter of calendar year 2013, with the remaining unpaid principal balance due and payable on the Maturity Date.

## ARTICLE XIV.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

**Section 14.01  Conditions Precedent to Confirmation.**

The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors, the Administrative Agent, the Exit Agent, the Junior Agent and the Sponsor, which shall include a finding of fact that the Debtors, the Administrative Agent, the Prepetition Senior Lenders, the Exit Agent, the Exit Lenders, the Junior Lender Agent, the Junior Lenders, the Sponsor and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Section 1125(e) of the Bankruptcy Code and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

The Debtors shall have arranged for credit availability under the Exit Revolving Facility to provide the Reorganized Debtors and their subsidiaries with their working capital needs.

**Section 14.02  Conditions Precedent to Consummation.**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be (x) satisfied or (y) waived in accordance with Section 8.04 of the Plan:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Administrative Agent, on behalf of

the Consenting Lenders, and become a Final Order and shall, *inter alia*, provide that the Prepetition Senior Facilities Claims and the Junior Lender Claims are Allowed Claims.

**(b)**    The Exit Credit Agreement shall have been executed and delivered by all parties thereto, and all conditions precedent to consummation thereof shall have been waived or satisfied in the manner permitted thereunder, and funding pursuant to the Exit Credit Facilities shall have occurred.

**(c)**    The following agreements, in form and substance reasonably acceptable to the Debtors or Reorganized Debtors, as applicable, the Administrative Agent, on behalf of the Consenting Lenders, the Exit Agent, the Junior Lender Agent and the Sponsor, shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied:

(i)    Restated Corporate Documents

(ii)    New Entity Documents; and

(iii)    Management Incentive Plan.

**(d)**    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

**(e)**    There shall not be in effect on the Effective Date any (i) order entered by a court or (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity or (ii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

**(f)**    No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall remain pending.

**(g)**    The Effective Date shall have occurred on or prior to the 30th day after the Confirmation Date.

**(h)**    To the extent provided for in Section 7.04(b) hereof, the Debtors shall reimburse all reasonable costs and expenses, including all fees and expenses, of the Administrative Agent and the Exit Agent.

**(i)**    Either (A) the issuance of all shares or interests of New Equity Interests to be issued under the Plan shall qualify for the exemption from securities laws under Section 1145 of the Bankruptcy Code, (B) the Debtors shall have received from each Holder of an Allowed Claim in Class 5 and Class 6, and each Holder of an Allowed Interest in Class 10, from whom it shall have so requested, a representation in form and substance reasonably satisfactory to the Debtors that such Person is an "accredited investor" and such other representations as the Debtors may reasonably request in order to determine that all shares or interests

{856863;8}                                                    50