of New Equity Interests were offered and issued in a private placement to "accredited investors" only under Rule 506 under the Securities Act, or (C) the Debtors reasonably determine that the issuance of all shares or interests of New Equity Interests to be issued under the Plan is otherwise exempt from registration.

**Section 14.03  Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 14.04  Waiver of Conditions.**

Each of the conditions set forth in Section 14.02 above may be waived in whole or in part by written consent of the Debtors, the Administrative Agent, on behalf of the Consenting Lenders, the Exit Agent, the Junior Lenders, and the Sponsor, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized Debtors).  The failure of the Debtors, the Reorganized Debtors, the Administrative Agent, the Exit Agent, the Junior Lenders, or the Sponsor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE XV.

## REORGANIZED DEBTORS

Following the Effective Date, the Reorganized Debtors will continue to operate the core businesses presently operated by the Debtors.  The Debtors believe that as Reorganized Debtors they will be able to compete more effectively in the competitive marketplace in which they conduct their businesses.  In particular, the Debtors believe that their businesses profitability can be enhanced and long-term stability and growth achieved under the capital structure contemplated by the Plan, especially given the recapitalization of the claims of the Prepetition Senior Lenders and Junior Lenders. The Debtors believe that no significant personnel reduction will take place in connection with confirmation of the Plan.

## ARTICLE XVI.

## SUMMARY OF CERTAIN RISK FACTORS RELATING TO THE PLAN

The terms and provisions of the Plan are subject to a number of material risks, including those enumerated below. The risk factors enumerated below assume confirmation and the consummation of the Plan and all transactions contemplated therein, and do not include matters that could prevent or delay confirmation.  Prior to deciding whether and how to vote on the Plan, holders of Claims should carefully consider all of the information contained in this Disclosure Statement, especially the factors mentioned in the following paragraphs.

{856863;8}                                          51

**Section 16.01 Risks Relating to the Projections.**

The Debtors have prepared the Projections in connection with the development of the Plan in order to present the projected effects of the Plan. The Projections assume the Plan and the transactions contemplated thereby will be implemented in accordance with their terms. The assumptions and estimates underlying such Projections are inherently uncertain and are subject to significant business, economic and competitive risks and uncertainties that could cause actual results to differ materially from those projected. Such uncertainties and other factors include objections to the Plan, Court approval of the Plan, the Debtors' ability to acquire and collect receivables, political considerations and general economic conditions. Accordingly, the Projections do not necessarily indicate, and may vary significantly from, the future financial condition or results of operations of Reorganized Debtors. Consequently, the projected financial information contained herein or in Exhibits attached hereto should not be regarded as a representation by the Debtors, the Debtors' advisors, or legal counsel, or any other person that the Projections can or will be achieved.

**Section 16.02 Noncomparability of Historical Financial Information.**

As a result of the consummation of the Plan and the transactions contemplated thereby, the financial condition and results of operations of Reorganized Debtors from and after the Effective Date will not be comparable to the financial condition or results of operations reflected in the historical financial statements of the Debtors contained herein or in the Exhibits attached hereto.

**Section 16.03 Certain Risks Associated with the Reorganization Case.**

The Debtors are parties to various contracts under which the commencement of the Reorganization Case and the other transactions contemplated by the Plan could, subject to the Debtors' rights and powers under Sections 362 and 365 of the Bankruptcy Code, (a) result in a breach, violation, default or conflict, (b) give other parties thereto rights of termination or cancellation, or (c) have other adverse consequences for the Debtors or Reorganized Debtors. The magnitude of any such adverse consequences may depend upon, among other factors, the diligence and vigor with which other parties to such contracts may seek to assert rights and pursue remedies in respect of such matters, and the ability of the Debtors or Reorganized Debtors to resolve such matters on acceptable terms through negotiations with such other parties or otherwise. Although the Debtors presently believe that none of the foregoing matters will have a material adverse affect on the business, financial condition or results of operations of Reorganized Debtors, there can be no assurance with respect thereto.

Additionally, due to the disruptions caused by the Chapter 11 Cases, certain of the Debtors' relationships with customers, suppliers and/or vendors may have been adversely affected. Although the Debtors believe their relationships with customers, suppliers and/or vendors have not materially changed due to the Chapter 11 Cases, it is possible that the bankruptcy process and the resolution of Claims against the Debtors could have an adverse effect on the Reorganized Debtors' financial and operating results.

### Section 16.04 Capital Requirements.

Reorganized Debtors' businesses are expected to require certain amounts of working capital.  While the Projections assume that Reorganized Debtors will generate sufficient funds to meet their working capital needs for the foreseeable future, the ability of Reorganized Debtors to gain access to additional capital, if needed, cannot be assured, particularly in view of competitive factors and industry conditions.

### Section 16.05 Lack of Trading Market.

There can be no assurance that a market will develop for the New Equity Interests issued pursuant to the Plan.

### Section 16.06 Restricted Resale of Securities Distributed Under the Plan.

The New Equity Interests will be distributed pursuant to the Plan without registration under the Securities Act or any state securities laws pursuant to exemptions from such registration contained in Section 1145(a) of the Bankruptcy Code.  With certain exceptions, resale of such securities by such holder would not be exempt from the registration requirements under the Securities Act and securities laws pursuant to Section 1145 of the Bankruptcy Code and, accordingly, could be effected only pursuant to an effective registration statement or in reliance on another applicable exemption from such registration requirements.

### Section 16.07 Tax Consequences; Unsettled and Complex Legal Issues

Some of the tax consequences of the Plan are unsettled and raise complex legal issues, and also involve various factual determinations, that raise additional uncertainties.  The Debtors cannot ensure that the IRS (or other applicable taxing authorities) will not take a contrary view and no ruling from the IRS has been or will be sought regarding the tax consequences of the Plan.  In addition, the Debtors cannot ensure that the IRS (or other applicable taxing authorities) will not challenge the various positions the Debtors have taken, or intend to take, with respect to various tax issues, or that a court would not sustain such a challenge.

### Section 16.08 Risks of Non-Confirmation and Objections to Classification of Claims.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Court will confirm the Plan.  A non-accepting creditor or equity holder of the Debtors might challenge the adequacy of this Disclosure Statement or the balloting procedures and results as not being in compliance with the Bankruptcy Code and/or Bankruptcy Rules.  Even if the Court were to determine that this Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Plan if it were to find that any of the statutory requirements for confirmation had not been met.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Court that the confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization and that the value of distributions to non-accepting holders of

claims within a particular class under the Plan will not be less than the value of distributions such holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

While there can be no assurance that the Court will conclude that these requirements have been met, the Debtors believe the Plan will not be followed by a need for further financial reorganization and that non-accepting Holders within each Class under the Plan will receive distributions at least as great as would be received following a liquidation pursuant to Chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such Chapter 7 case.

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a class or an interest in an a particular class only if such class or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there is no assurance that the Bankruptcy Court will necessarily hold that the Claims classification scheme complies the Bankruptcy Code, which could delay or prevent the confirmation of the Plan.

The confirmation and consummation of the Plan are also subject to certain conditions. If the Plan was not to be confirmed, it is unclear whether the restructuring could be implemented and what distribution Holders of Claims ultimately would receive with respect to their Claims. If an alternative reorganization could not be agreed to, it is possible that the Debtors would have to liquidate their assets, in which case it is likely that Holders of Claims would receive substantially less than the treatment they will receive pursuant to the Plan.

## ARTICLE XVII.

## RETENTION OF JURISDICTION

Subject to the jurisdictional provisions of Title 28, United States Code, under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)  entry and implementation of such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(b)  consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(c)  determination of any objections to proofs of Claim and/or Interests filed, or to otherwise resolve any Contested Claim/Interest;

(d)  determination of requests for allowance and/or payment of Administrative Claims, including, without limitation, requests for compensation of and reimbursement of

expenses of Professionals and other parties entitled thereto under Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code;

(e)     resolution of any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to determine any Rejection Claims;

(f)     determination of any and all adversary proceedings and/or contested matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors prior to or after the Effective Date;

(g)     resolution of matters relating to the recovery of all property of the Debtors' Estates and assets of the Reorganized Debtors, wherever located;

(h)     determination of matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(i)     determination of the scope of any discharge of any Debtor under the Plan and/or the Bankruptcy Code;

(j)     accomplishment of distributions to Holders of Allowed Claims and/or Interests as provided in the Plan;

(k)     issuance of injunctions, entry of other orders, or other Court action as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the terms of the Plan, the Confirmation Order, or any other Order of the Court;

(l)     entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(m)     entry of orders in aid of execution and consummation of the Plan as provided by Section 1142 of the Bankruptcy Code;

(n)     determination of disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(o)     to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(p)     entry of Final Decrees closing the Chapter 11 Cases.

**Section 17.02 Failure of Court to Exercise Jurisdiction.**

If the Court abstains from exercising or declines to exercise jurisdiction, or determines that it is without jurisdiction over any matter or proceeding arising out of, related to, or otherwise, connected with the Chapter 11 Cases, the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter shall not be limited or otherwise affected by the Plan.

# ARTICLE XVIII.

# AMENDMENTS AND MODIFICATIONS

The Debtors, with the consent if the Administrative Agent, on behalf of the Consenting Lenders, Exit Agent and the Junior Lenders, may alter, amend, or modify the Plan or any exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XIX.

# COMPROMISES AND SETTLEMENTS

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XX.

## MISCELLANEOUS PROVISIONS

### Section 20.01 Bar Dates for Certain Claims.

**(a)    Proofs of Claims or Interests.**

As previously ordered by the Court in its Claims Order, all Holders of Claims against and/or Interests in the Debtors, including without limitation, the Twenty-Day Claims and Priority Tax Claims, other than the Holders of certain Administrative Claims and Rejection Claims, must have filed proofs of claims or interests with the Court on or before the Bar Date of March 31, 2010.

**(b)    Requests for Allowance/Payment of Administrative Claims.**

(i)    <u>Pre-Confirmation Date Claims</u>.    All applications for allowance and payment of Non-Ordinary Course Administrative Claims allegedly incurred by the Debtors on or before the Confirmation Date shall be filed no later than 45 days after the Effective Date.  Twenty-Day Claims are subject to, *inter alia*, the general Bar Date for Claims.

(ii)    <u>Effect of Failure to Assert   Timely Claims</u>.    Any Holders of Administrative Claims who do not timely assert such Claims shall be forever barred from asserting such Claims against the Debtors, the Reorganized Debtors, and/or any property of the same.

(iii)    <u>Ordinary Course Administrative Liabilities</u>.  Holders of Ordinary Course Administrative Claims (other than Claims of governmental units for taxes (and for interest and/or penalties related to such taxes)) shall not be required to file any request for payment of such Claims.  Such Ordinary Course Administrative Claims, unless objected to by a Debtor, shall be assumed and paid by the Debtors, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

**(c)    Rejection Claims.**

A claimant possessing a Rejection Claim must File proof of such Claim not later than 30 days following the date of any Final Order approving the rejection of the subject executory contract or unexpired lease.

**(d)    Professional Fee Claims; Substantial Contribution Claims.**

The Confirmation Order will establish a Fee Claims Bar Date for filing of all Professional Fee Claims (including claims for the expenses of the members of the Committee) and Substantial Contribution Claims, which date will be 45 days after the Effective Date. (the "<u>Fee Claims Bar Date</u>").  A notice prepared by the Reorganized Debtors will set forth such date and constitute notice of this Fee Claims Bar Date.  The Debtors or Reorganized Debtors, the Committee, the United States Trustee, and any other parties in interest shall have 25 days (or such longer period

as may be allowed by order of the Bankruptcy Court) following the Fee Claims Bar Date to review and object to such Administrative Claims.

(e)     **Administrative Tax Claims.**

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Reorganized Debtors and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors or their property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority files and serves its application.

**Section 20.02 Successors and Assigns.**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir(s), executor(s), administrator(s), successor(s) or assign(s) of such Entity.

**Section 20.03 Payment of Statutory Fees.**

The quarterly fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) shall be paid when due (*i.e.*, on or before the last day of the month following each calendar quarter) until the Chapter 11 Cases are closed.  All other fees payable pursuant to 28 U.S.C. § 1930 through confirmation of the Plan shall be paid on the Effective Date, and thereafter by the Reorganized Debtors.

**Section 20.04 Discharge of the Debtors.**

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties, and, except as otherwise provided in the Plan or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, (a) the Debtors, shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of a Claim

based upon such debt accepted the Plan; and (b) all Interests and other rights of the equity security holders in the Debtors shall be terminated. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the Effective Date occurring.

**Section 20.05 Exculpation and Limitation of Liability.**

None of the Reorganized Debtors, Administrative Agent, Prepetition Senior Lenders, Junior Lenders, Sponsor, Exit Agent, Exit Lenders, and the Committee, or any of their respective present or former members, managers, equity holders, partners, officers, directors, employees, advisors, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or the successors or assigns of any of the foregoing, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases and the commencement thereof, negotiation of the Disclosure Statement or the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of the Plan, no Holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, Estates, Administrative Agent, Prepetition Senior Lenders, Junior Lenders, Sponsor, Exit Agent, Exit Lenders, and the Committee, or the present or former members, managers, equity holders, partners, officers, directors, employees, advisors, attorneys, or agents of any of the foregoing, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases including the commencement thereof, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct.

The foregoing exculpation and limitation on liability shall not limit, abridge, or otherwise affect the rights, if any, of the Reorganized Debtors to enforce or settle the Causes of Action.

**Section 20.06 Permanent Injunction.**

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtors will be permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors on account of any such Claim or Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or

Interest, and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest. The foregoing injunction will extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.

**Section 20.07  Releases by the Debtors.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors and any successors shall be deemed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors or the Reorganized Debtors, the Chapter 11 Cases or the Plan (other than the rights of the Debtors and Reorganized Debtors and any successors to enforce the Plan and the contracts, instruments, releases, and other agreements or documents assumed, passed through or delivered in connection with the Plan) and whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date and in any way relating to the Debtors, Reorganized Debtors or any successors or their property, the Chapter 11 Cases (including the commencement thereof), the Plan, Administrative Agent, Prepetition Senior Lenders, Junior Lenders, Sponsor, Exit Agent and Exit Lenders, and that may be asserted by or on behalf of the Debtors, the Reorganized Debtors against the Administrative Agent, Prepetition Senior Lenders, Junior Lenders, Exit Agent and Exit Lenders, and any successors or their property and each of their members, managers, directors, officers, employees, agents, financial advisors, representatives, affiliates, attorneys and other professionals as of the Effective Date; *provided, however*, that such releases shall not operate as a waiver or release of any causes of action arising out of (x) any express contractual obligation owing by any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate, attorney or other professional, or (y) the willful misconduct, gross negligence, intentional fraud or criminal conduct of such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate or professional.

**Section 20.08  Releases by Holders of Claims and Interests.**

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim (including a Prepetition Senior Facility Claim and a Junior Lender Claim) or Interest that votes in favor of the Plan (or is deemed to accept the Plan), and to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Holder of a Claim or Interest that does not vote to reject the Plan, shall be deemed to unconditionally, forever release, waive and discharge all Claims, Interests, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the recapitalization and restructuring efforts undertaken by the Debtors, the Chapter 11 Cases (including the commencement thereof), and the Plan (other than the rights to enforce the Plan and the contracts, instruments, releases, and other agreements or documents

assumed, passed through or delivered in connection with such Plan) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors and any successors, the Chapter 11 Cases, the Plan, Administrative Agent, Prepetition Senior Lenders, Junior Lenders, Exit Agent, Exit Lenders and the Sponsor against (i) the Debtors, the Reorganized Debtors and any successors, (ii) the Debtors' present and former managers, members, directors, officers, employees, agents, financial advisors, attorneys and other professionals, (iii) the Committee, its members and its counsel, and their successors and assigns, directors, officers, partners, members, shareholders, employees, and agents, (iv) the Administrative Agent and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals, (v) the Prepetition Senior Lenders and each of their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals, (vi) the Junior Lenders and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals, (vii) the Exit Agent and its successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals, (viii) the Exit Lenders and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals, and (ix) Sponsor and its successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, and other advisors and/or professionals; *provided, however*, that the foregoing shall not waive or release any causes of action arising out of (y) any express contractual obligations owing by any such manager, member, director, officer, employee, agent, financial advisor, attorney or other Professional of the Debtors, the Reorganized Debtors and any successors, or (z) the willful misconduct, gross negligence, intentional fraud or criminal conduct of such manager, member, director, officer, employee, agent, financial advisor, representative or Professional of the Debtors.

### Section 20.09 Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest (except the Junior Lender Claims) in accordance with any contractual, legal, or equitable subordination relating thereto.

### Section 20.10 Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in these Chapter 11 Cases.

**Section 20.11  Plan Supplement.**

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than ten (10) days prior to the Plan Voting Deadline.  The Plan Supplement will include, among other things, the final documentation for the Exit Credit Agreement, the Management Incentive Plan, the Restated Corporate Documents of Reorganized Ramsey Holdings, the New Entity Documents of Ramsey LLC, the schedule identifying the proposed directors of the Reorganized Debtors, the LLC Agreement, the Exit Term Loan, the Exit Revolving Facility and the identity of the Persons who will serve as directors of Ramsey LLC (if known by the date the Plan Supplement is filed).

Upon filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours or on its website (http://www.oknb.uscourts.gov).  Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors or their bankruptcy counsel.

**Section 20.12  Severability of Plan Provisions.**

If prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or the conditions to Confirmation or the Effective Date is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a final judicial determination and shall provide that each term and provision of the Plan as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**Section 20.13  Term of Injunctions or Stay.**

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 20.14  Setoffs.**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Reorganized Debtor may setoff against any Allowed Claim (other than an Allowed Claims in Class 1, 2, 5 or 6) or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed

Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 or otherwise.

### Section 20.15 Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### Section 20.16 Hart-Scott-Rodino Compliance.

Any shares or interests of New Equity Interests to be distributed under the provisions of the Plan to any entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such entity shall have expired or been terminated.

### Section 20.17 Dissolution of Committee.

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

## ARTICLE XXI.

## TAX CONSEQUENCES

*There may be federal, state and/or local tax consequences for the Reorganized Debtors and the creditors and interest holders of the Debtors as a result of the Plan. The tax consequences of the Plan are complex and, in some instances, uncertain. Such consequences may vary based upon the individual circumstances of each Holder of a Claim or Interest. Accordingly, each Holder of a Claim or Interest is strongly urged to consult its own tax advisor regarding the federal, state, local and possibly foreign tax consequences of the Plan.*

# ARTICLE XXII.

## CONFIRMATION PROCEDURES AND REQUIREMENTS

### Section 22.01 Confirmation where Sufficient Acceptances are Obtained.

Section 1129(a) of the Bankruptcy Code sets forth specific requirements for confirmation of a plan where sufficient acceptances are obtained. Among other things, the Court must find that a plan is "proposed in good faith" and not by any means forbidden by law, that it makes certain specified disclosures, and that it provides that any payment made to any person in connection with such plan and incident to the reorganization case be reasonable and subject to the Court's approval. In addition, the plan and the plan proponent must comply with the provisions of the Bankruptcy Code, all impaired classes must vote in favor of the plan, the plan must satisfy the "best interest of creditors" test and the plan must be feasible.

### Section 22.02 Chapter 7 Liquidation Analysis and "Best Interest of Creditors" Test.

Section 1129(a)(7) of the Bankruptcy Code provides that before a plan can be confirmed, the Court must determine that the plan provides, with respect to each impaired class of claims or interests, that each holder of a claim or interest in an impaired class either:

(i)     has accepted the plan, or

(ii)    will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than such would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

The first step in meeting this test is to determine the dollar amount that could be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. The gross amount of Cash available would be the sum of the proceeds from the disposition of the Debtors' assets and the Cash held by the Debtors at the time of the commencement of the chapter 7 case. The next step is to reduce that total by the amount of any claims secured by such assets, the costs and expenses of this liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation. Any remaining net Cash would be allocated to creditors and shareholders in strict priority in accordance with Section 726 of the Bankruptcy Code. Finally, taking into account the time necessary to accomplish the liquidation, the present value of such allocations may be compared to the value of the property that is proposed to be distributed under the Plan on the Effective Date.

The Debtors' costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee in bankruptcy, as well as those that might be payable to attorneys and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtors during the chapter 11 case and allowed in the chapter 7 case, such as compensation for attorneys, financial advisors, appraisers, accountants and other professionals, and costs and expenses of members of any statutory committee of unsecured creditors appointed by the United States Trustee pursuant to Section 1102 of the Bankruptcy Code and any other committee so appointed. Moreover, in a chapter 7 liquidation, additional claims would arise by reason of the breach or

rejection of obligations incurred and executory contracts or leases entered into by the Debtors both prior to and during the pendency of the Chapter 11 Cases.

The foregoing types of claims, costs, expenses, fees and such other claims that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-chapter 11 priority and unsecured claims. The Debtors believe that in a chapter 7 case, Holders of Allowed Claims in Classes 3 (Other Priority Claims), 4 (General Unsecured Claims), 5 (Unsecured Deficiency Claims), 6 (Junior Lender Claims), 7 (Administrative Convenience Claims), 9 (Intercompany Interests), and 10 (Parent Equity Interests) would receive no distributions of property.

A Liquidation Analysis of the Debtors is provided in Exhibit "D" to this Disclosure Statement. The Debtors believe that the provisions of Section 1129(a)(7) will be satisfied with respect to the Plan.

### Section 22.03 Feasibility Test.

The Bankruptcy Code, requires, for plan confirmation, that the Court determine that the confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed the ability of Reorganized Debtors to meet their obligations under the Plan while retaining a sufficient amount of cash to carry on its operations. As part of this analysis, the Debtors have prepared the Projections contained in ARTICLE XIII of this Disclosure Statement. The Projections are based upon the assumption that the Plan will be confirmed by the Bankruptcy Court. Based upon the Projections, the Debtors believe they will be able to make all payments required to be made pursuant to the Plan and, therefore, the Plan meets the feasibility requirement of the Bankruptcy Code.

### Section 22.04 "Cram Down"—Fair and Equitable Test; Unfair Discrimination.

If all of the requirements of Section 1129(a) of the Bankruptcy Code are met except for the requirement that each class of impaired claims or interests accept the plan, the Court, on the request of the Debtors, may confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class that has not accepted the Plan.

The requirement that a plan not "discriminate unfairly" means, among other things, that a dissenting class must be treated substantially equally with respect to other classes of equal rank. The Debtors believe that the Plan does not unfairly discriminate against any Class that may not accept or otherwise consent to the Plan.

Tests for defining the term "fair and equitable" are contained in Section 1129(b)(2) of the Bankruptcy Code. A plan is deemed fair and equitable with respect to an impaired class of unsecured claims if each member of the class receives or retains on account of its claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim, or alternatively, no holder of a claim or interest that is junior to the claims of the rejecting class of unsecured creditors will receive or retain any value under the plan on account of such junior claims or interests. This test is sometimes referred to as the "absolute priority" rule because it

entitles any rejecting class to have its claims satisfied in full before junior classes receive or to retain any value under the plan of reorganization.

## ARTICLE XXIII.

## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that the confirmation and consummation of the Plan is preferable to all other alternatives.

**CONSEQUENTLY, THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ESTABLISHED IN THESE CHAPTER 11 CASES URGE ALL HOLDERS OF CLASS 1, 4, 5, 6 AND 10 CLAIMS AND INTERESTS TO VOTE TO ACCEPT THE PLAN, AND TO DULY COMPLETE AND RETURN THEIR BALLOTS SO THAT THEY WILL BE ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON _____, 2010.**

**RAMSEY HOLDINGS, INC.**

By: _____
John R. Celoni, Jr., President & CEO

**RAMSEY INDUSTRIES, INC.**

By: _____
John R. Celoni, Jr., President & CEO

**RAMSEY WINCH, INC.**

By: _____
John R. Celoni, Jr., President & CEO

**AUTO CRANE COMPANY**

By: _____
John R. Celoni, Jr., President & CEO

**ESKRIDGE, INC.**

By: _____
John R. Celoni, Jr., President & CEO