## <u>INDEX OF EXHIBITS</u>

- Exhibit A – Plan and Related Documents
  - A-1 – Joint Plan of Reorganization of Affiliated Debtors
  - A-2 – Plan Term Sheet
  - A-3 – LLC Agreement Term Sheet
  - A-4 – Exit Term Loan Term Sheet
  - A-5 – Exit Revolving Facility Commitment Letter with Exit Revolving Facility Term Sheet
  - A-6 – Management Incentive Plan Term Sheet
  - A-7 – Administrative Agent Fee Letter

Exhibit B – Financial Statements
  - B-1 Audited Financial Statements for 2006
  - B-2 Audited Financial Statements for 2007
  - B-3 Unaudited Financial Statements for 2008

Exhibit C – Bank Account Balances as of February 26, 2010

Exhibit D – Liquidation Analysis

Exhibit E – Balance Sheet and Income Statement from the Debtors' Monthly Operating Reports for periods ending (i) December 31, 2009; (ii) January 31, 2010; and (iii) February 28, 2010

Exhibit F – Disclosure Statement Order

# EXHIBIT A

**(Plan and Related Documents)**

# <u>EXHIBIT A-1</u>

**(Joint Plan of Reorganization of Affiliated Debtors)**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **RAMSEY HOLDINGS, INC.,** *et al.*, | : | **Case No. 09–13998-M** |
| | : | |
| **Debtors.** | : | **(Jointly Administered with Case** |
| | : | **Nos. 09-13999-M, 09-14000-M,** |
| | : | **09-14001-M and 09-14002-M)** |

------------------------------------------------------------x

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**
**OF AFFILIATED DEBTORS**

Ramsey Holdings, Inc., Ramsey Industries, Inc., Auto Crane Company, Ramsey Winch Company, and Eskridge, Inc., Debtors and Debtors-in-possession in the above-captioned jointly-administered cases, hereby propose the following *First Amended Joint Plan of Reorganization of Affiliated Debtors* (the "Plan") for the resolution of all outstanding Claims against, and Interests in, the Debtors.

**ARTICLE I**

**DEFINITIONS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

**1.01**  **Rules of Interpretation.**

For purposes of this Plan:

(a)    wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter;

(b)    all article, section, schedule, or exhibit references in the Plan are to the respective article of, section in, schedule to, or exhibit to the Plan, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof;

(c)    all references to dollars are to the lawful currency of the United States of America;

(d)    the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan;

(e)    if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the exhibit shall control;

(f)    captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and

(g)    the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with any other provision in this Section.

**1.02    Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.03    Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of law thereof.

**1.04    Definitions.**

Certain capitalized terms used in the Plan are defined in this Section 1.04.   Other capitalized terms are defined within the body of other Sections of the Plan, or by reference to documents associated with the Plan.   Any other capitalized terms found in this Plan, and not otherwise defined herein, shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules (and shall be construed in accordance with the rules of construction thereunder).   The following terms shall have the respective meanings set forth below:

"**Administrative Agent**" means CIT Lending Services Corporation, solely in its capacity as administrative and collateral agent for the Prepetition Senior Lenders under the Prepetition Senior Credit Agreement.

"**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (without limitation) (i) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of each of the Debtors; (ii) all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code; (iii) Professional Fee Claims and (iv) Twenty-Day Claims.

"**Administrative Convenience Claim**" means a Allowed Unsecured Claim that is less than $1,000.

"**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"**Allowed**" means --

(1)      that portion of any Claim or Interest, other than an Administrative Claim as to which (a) no proof of claim or interest has been Filed, but has been scheduled by a Debtor pursuant to the Bankruptcy Code as undisputed, liquidated and non-contingent; (b) a proof of claim or interest has been timely Filed in a liquidated amount and (i) no objection to the allowance of such Claim or Interest has been interposed before any final date for the filing of such objections, or (ii) if such objection has been Filed, such objection has been overruled by a Final Order (but only to the extent such objection has been overruled); (c) a Claim or Interest is allowed pursuant to the Plan and/or the Confirmation Order; or (d) a Final Order has been entered allowing such Claim or Interest;

(2)      with regard to a Non-Ordinary Course Administrative Claim, the amount Allowed by Court Order; and

(3)      with regard to an Ordinary Course Administrative Claim, that portion of the subject Claim that the Debtors in their fiduciary capacity have determined, and evidenced by payment, is a valid post-Petition Date obligation.

"**Auto Crane**" means Auto Crane Company, an Oklahoma corporation.

"**Avoidance Actions**" means Causes of Action arising under chapter 5 of the Bankruptcy Code, including, but not limited to, Causes of Action arising under sections 502(d), 510, 542, 543, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

"**Bankruptcy Code**" means Title 11 of the United States Code, as applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Oklahoma, which has jurisdiction over the Chapter 11 Cases on reference from the United States District Court for the Northern District of Oklahoma.

"**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court, as applicable in the Chapter 11 Cases.

"**Bar Date**" means the March 31, 2010, bar date for filing proofs of claim or interest against the Debtors that has been established by the Claims Order.

"**Benefit Plans**" means all benefit plans, policies and programs sponsored by the Debtors, including, without limitation, all savings plans and health and welfare plans, including, but not limited to, the Pension Plans.

"**Borrowers**" means Ramsey Industries, Ramsey Winch, Auto Crane and Eskridge.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, proceedings, controversies, liabilities, rights, suits, damages, judgments, claims, objections to Claims, benefits of subordination of Claims, and demands whatsoever, whether choate or inchoate, known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including the period through the Effective Date.

"**Chapter 11 Cases**" means the instant bankruptcy cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Ramsey Holdings, Inc.* (Case No. 09-13998-M); *In re Ramsey Industries, Inc.* (Case No. 09-13999-M); *In re Ramsey Winch Company* (Case No. 09-14000-M) *In re Auto Crane Company* (Case No. 09-14002-M); and *In re Eskridge, Inc.* (Case No. 09-14001-M), currently pending before the Bankruptcy Court.

"**Claim**" means a claim against a Debtor, as described in Section 101(5) of the Bankruptcy Code, whether or not asserted in the Chapter 11 Cases.

"**Claims Order**" means the Order of the Court dated February 12, 2010, establishing, *inter alia*, a bar date for the Filing of proofs of claims and interests.

"**Class**" means a distinct and separate category of Claims or Interests as delineated in Article III of this Plan.

"**Collateral**" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

"**Committee**" means the official committee of unsecured creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

"**Confirmation**" means the act of approval of this Plan by the Court under Bankruptcy Code Section 1129 following the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket within the meaning of Fed. R. Bank. P. 5003(a) and 9021.

"**Confirmation Hearing**" means the hearing to consider Confirmation of this Plan pursuant to Section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the Order of the Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

"**Consenting Lenders**" means the Holders of Allowed Class 1 and Class 5 Claims who consented to the Plan Term Sheet.

"**Contested Claim/Interest**" means any Claim or Interest that has not yet been Allowed, and (a) if no proof of claim or interest has been filed by the applicable bar date, a Claim or Interest that has been listed on the Schedules but not scheduled as disputed, contingent or unliquidated, but as to which a Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order, or as to which a party in interest has requested the Filing of an amendment to the Schedules; or (b) if a proof of claim or interest, or request for payment of an Administrative Claim, has been filed by the applicable deadline: (i) a Claim for which no corresponding liability has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding liability has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iii) a Claim or Interest for which a timely objection or request for estimation is interposed that has not been withdrawn or determined by a Final Order.

"**Corporate Documents**" means the certificate of incorporation and bylaws (or any other applicable organizational documents) of the Debtors in effect as of the Petition Date.

"**Court**" means the Bankruptcy Court, to the extent it may exercise jurisdiction in these Chapter 11 Cases, and otherwise, the United States District Court for the Northern District of Oklahoma, or if either such Court ceases to exercise jurisdiction over these Chapter 11 Cases, such other court that exercises jurisdiction over these Chapter 11 Cases.

"**Debtor(s)**" means, individually (and collectively), Ramsey Holdings, Ramsey Industries, Auto Crane, Ramsey Winch, and Eskridge, including in its/their capacity as debtor(s)-in-possession in the Chapter 11 Cases pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

"**Defined Benefit Pension Plans**" means (i) the amended and restated *Auto Crane Company Employees Retirement Plan* effective January 1, 2003, as amended; and (ii) the amended and restated *Ramsey Winch Company Employees Retirement Plan* effective January 1, 2003, as amended.

"**Directors Expenses**" means all unreimbursed fees and expenses of the directors of each of the Debtors as of the Effective Date.

"**Directors & Officers Insurance**" means insurance for all current and former directors and officers of each of the Debtors during the period from April 5, 2007 through the Effective Date, including a tail insurance for no more than six years from the Effective Date.

"**Disbursing Agent**" means, solely to effectuate distributions pursuant to the Plan, the Reorganized Debtors or such other entity as may be designated in the Confirmation Order.

"**Disclosure Statement**" means the Filed *First Amended Disclosure Statement for Joint Plan of Reorganization of Affiliated Debtors: Ramsey Holdings, Inc.; Ramsey Industries, Inc.; Ramsey Winch Company.; Auto Crane Company; and Eskridge, Inc.* that relates to this Plan, as it may be further amended, modified or supplemented.

"**Distribution Date**" means the date on which initial distributions of property under the terms of this Plan shall be made by the Disbursing Agent to Holders of Allowed Claims and Interests, which date shall be fourteen (14) days following the Effective Date, unless, and then to the extent that, such period is enlarged by Court Order.

"**Distribution Record Date**" means the record date for purposes of making distributions under the Plan, which shall be the Plan Voting Deadline.

"**Distribution Reserve**" means the reserve, if any, established and maintained by the Reorganized Debtors, into which they shall deposit the amount of Cash or other property that would have been distributed by the Reorganized Debtors on the Distribution Date to Holders of (a) Contested Claim/Interests, (b) liquidated, undisputed, yet contingent, Claims, if such Claims had been non-contingent Claims on the Distribution Date, pending (i) the allowance of such Claims, (ii) the estimation of such Claims for purposes of allowance, or (iii) the realization of the contingencies, and (c) unliquidated Claims, if such Claims had been liquidated on the Distribution Date, such amount to be estimated by the Court or agreed upon by the Debtors or Reorganized Debtors, as the case may be, and the Holders thereof as sufficient to satisfy such unliquidated Claim upon such Claim's (i) allowance, (ii) estimation for purposes of allowance, or (iii) liquidation, pending the occurrence of such estimation or liquidation.

"**Effective Date**" means the date on which all conditions to the Effective Date set forth in Section 8.02 of this Plan have been satisfied or, if capable of being waived, duly and expressly waived.

"**Equity Security**" means any "equity security", as defined in Section 101(16) of the Bankruptcy Code, of a Debtor.

"**Eskridge**" means Eskridge, Inc., a Delaware corporation.

"**Estate**" means the bankruptcy estate created with respect to each of the Debtors in their Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

"**Exchange Act**" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78o et seq., as now in effect or hereafter amended.

"**Exit Agent**" means CIT Lending Services Corporation, solely in its capacity as agent for the Exit Lenders under the Exit Credit Agreement, or any successor agent appointed pursuant thereto.

"**Exit Credit Agreement**" means the senior secured credit agreement to be dated as of the Effective Date evidencing the Exit Credit Facilities by and among Reorganized

Debtors (except for Reorganized Ramsey Holdings), as borrowers, Reorganized Ramsey Holdings, as guarantor, the Exit Agent and the Exit Lenders, as such agreement may be subsequently amended, modified or supplemented from time to time, together with all instruments and agreements related thereto and which shall be substantially in the form to be included in the Plan Supplement.

"**Exit Credit Facilities**" means the Exit Revolving Facility and the Exit Term Loan.

"**Exit Lenders**" means the Exit Revolving Lenders and Exit Term Loan Lenders.

"**Exit Revolving Facility**" means the $3,000,000 senior secured first-lien revolving credit facility entered as of the Effective Date by Reorganized Debtors (except for Reorganized Ramsey Holdings), as borrowers, Reorganized Ramsey Holdings, as guarantor, the Exit Agent and the Exit Revolving Lenders, on the terms and conditions set forth in the Exit Credit Agreement.

"**Exit Revolving Lenders**" means the financial institutions from time to time party to the Exit Revolving Facility.

"**Exit Term Loan**" means the senior secured first-lien term loan in a principal amount of $50,000,000, to be entered into as of the Effective Date by and among Reorganized Debtors (except for Reorganized Ramsey Holdings), as borrowers, Reorganized Ramsey Holdings, as guarantor, the Exit Agent and the Exit Term Loan Lenders, on the terms and conditions set forth in the Exit Credit Agreement.

"**Exit Term Loan Lenders**" means the financial institutions from time to time party to the Exit Term Loan.

"**Face Amount**" means (a) when used in reference to a Contested Claim/Interest, the full stated amount claimed by the Holder of such Claim in any proof of Claim or Interest timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim or Interest, the allowed amount of such Claim or Interest.

"**Federal Judgment Rate**" means the federal judgment rate in effect as of the Petition Date.

"**Fee Claim Bar Date**" shall have the meaning set forth in Section 12.01(d) of the Plan.

"**File, Filed or Filing**" means file, filed or filing with the Court in the Chapter 11 Cases.

"**Final Order**" means an order or judgment of the Court as to which (a) the time to appeal, petition for certiorari, or move for re-argument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument, rehearing or new trial shall then be pending; (b) any right to appeal, petition

for certiorari, reargue, rehear or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, re-argument, rehearing or new trial has been sought, (i) such order of the Court shall have been affirmed by the highest court to which such order was appealed, certiorari has been denied as to such order, or re-argument or rehearing or new trial from such order shall have been denied; and (ii) the time to take any further appeal, petition for certiorari or move for re-argument, rehearing or new trial shall have expired without such actions have been taken.

"**General Unsecured Claim**" means any Unsecured Claim that is not an Administrative Convenience Claim.

"**Holder**" means the Entity holding legal title to a Claim or Interest.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Intercompany Claim**" means any Claim held by a Debtor against another Debtor or any Claim held by an Affiliate against a Debtor.

"**Intercompany Interest**" means an Interest in a Debtor held by another Debtor or any Interest in a Debtor held by an Affiliate of a Debtor, excluding the Parent Equity Interests.

"**Interests**" means, Equity Securities, including the Old Common Stock, Stock Options and Warrants, if any, together with any options, warrants, or rights, contractual or otherwise, to acquire or receive any such stock or ownership interests, including, but not limited to, the Stock Options, the Warrants, and any contracts or agreements pursuant to which the non-debtor party was or could have been entitled to receive shares of stock or other ownership interests in a Debtor, including, without limitation, Intercompany Interests and Parent Equity Interests.

"**Junior Lender Agent**" means AEA Mezzanine Funding LLC, acting solely in its role as administrative agent for the Junior Lenders.

"**Junior Lender Claims**" means the total obligations outstanding under the Subordinated Notes, which shall constitute Allowed Claims under the Plan in the amount of $27,604,420.92.

"**Junior Lenders**" means the lenders from time-to-time under the Subordinated Notes.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"**LLC Agreement**" means "LLC Agreement" to be dated as of the Effective Date of Ramsey LLC, which shall include the terms and conditions set forth in Section 4.02(c) of the Plan and which shall be substantially in the form to be included in the Plan Supplement.

"**Management Incentive Plan**" means the management incentive plan entered on the Effective Date to provide equity and other incentives to the Reorganized Debtors' management, which shall be substantially in the form to be included in the Plan Supplement, including, but not limited to, (i) the Series D Equity Interests and (ii) the restructuring bonus and the 2010 bonus described in the Plan Term Sheet.

"**New Boards**" shall have the meaning set forth in Section 4.04 of the Plan.

"**New Entity Documents**" means the certificate of limited liability company interests and LLC Agreement (or any other applicable organizational documents) of Ramsey LLC in effect on the Effective Date. The New Entity Documents of Ramsey LLC shall be substantially in the form to be included in the Plan Supplement.

"**New Equity Interests**" means, collectively, the Series A Equity Interests, Series B Equity Interests, the Series C Equity Interests and the Series D Equity Interests.

"**Non-Ordinary Course Administrative Claim**" means an Administrative Claim that is not an Ordinary Course Administrative Claim.

"**Old Common Stock**" means all of the shares of common stock of Ramsey Holdings issued and outstanding as of the Petition Date, including, if any, all of the Sponsor's shares, other investors shares and management shares.

"**Order**" means an order or judgment of the Court as entered on the docket.

"**Ordinary Course Administrative Claim**" means an Administrative Claim incurred in the ordinary course of business of any of the Debtors, including, without limitation, a Claim arising under 28 U.S.C. § 1930.

"**Other Priority Claims**" means a Claim entitled to priority under Sections 507(a)(4), (5), and/or (7) of the Bankruptcy Code.

"**Other Secured Claim**" means any Secured Claim against Debtors other than the Prepetition Senior Facility Claims.

"**Parent Equity Interest**" means any Interest in Ramsey Holdings consisting of, *inter alia*, the Old Common Stock.

"**Pension Plans**" means (i) *Ramsey Industries, Inc. Defined Benefit Replacement Allocation Plan (A Defined Contribution Plan)* effective October 1, 2006; (ii) *Management Security Plan of Ramsey Industries, Inc. and Subsidiaries*, as amended; and (iii) the Defined Benefit Pension Plans.

"**Person**" means an individual, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agreed or political subdivision thereof) or other entity of any kind.

"**Petition Date**" means December 18, 2009, the date on which each of the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this plan of reorganization, together with all addenda, exhibits, schedules, supplements or other attachments annexed hereto.

"**Plan Supplement**" means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed with the Bankruptcy Court not later than ten (10) days prior to the Plan Voting Deadline or such later date as may be approved by the Bankruptcy Court, including, but not limited to, (a) the Exit Credit Agreement, (b) the Management Incentive Plan, (c) the Restated Corporate Documents of Reorganized Ramsey Holdings, (d) the New Entity Documents of Ramsey LLC, (e) the schedule of executory contracts and unexpired leases being rejected pursuant to Section 6.01 of the Plan, and (f) the schedule identifying the proposed directors of the Reorganized Debtors (and, to the extent any such Person is an insider of the Debtors, the nature of any compensation to such Person).

"**Plan Term Sheet**" means that certain *Preliminary Summary of Terms and Conditions of an Amendment Agreement or an Amendment and Restatement of the Credit Agreement and a Recapitalization of Ramsey Holdings, Inc., Ramsey Industries, Inc. and its Subsidiaries* dated February 3, 2010.

"**Plan Voting Deadline**" means the deadline established by the Bankruptcy Court for voting on the Plan.

"**Prepetition Senior Credit Agreement**" means senior secured credit facility credit agreement dated as of April 5, 2007, by and among the Borrowers, as borrowers, the Administrative Agent, and the financial institutions from time to time party thereto, as such agreement may have been subsequently modified, amended, or supplemented.

"**Prepetition Senior Credit Documents**" means, collectively (a) the Prepetition Senior Credit Agreement, (b) each security agreement, instrument, note, guaranty, pledge agreement, mortgage, and any other document entered into pursuant to or in connection with the Prepetition Senior Credit Agreement, (c) the Swap Agreements and (d) each other agreement that creates or purports to create or perfect a Lien in favor of the Prepetition Senior Lenders.

"**Prepetition Senior Facility**" means that certain senior secured credit facility entered into pursuant to the Prepetition Senior Credit Agreement.

"**Prepetition Senior Facility Claims**" means the total obligations outstanding under the Prepetition Senior Credit Documents, which shall constitute Allowed Secured Claims or Allowed Unsecured Deficiency Claims, as the case may be, under the Plan in the amount of $71,190,825 (plus accrued and unpaid pre-petition interest, fees, costs and other expenses).

"**Prepetition Senior Lenders**" means the financial institutions from time to time party to the Prepetition Senior Credit Agreement and/or the Swap Agreements.

"**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any professional (a) employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 329, 330 or 331 of the Bankruptcy Code or (b) seeking compensation and reimbursement pursuant to Section 503(b)(4) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

"**Pro Rata Share**" means the proportion that a Claim or Interest bears to the sum of all Claims or Interests within such Class for which an allocation is being determined.

"**Ramsey Holdings**" means Ramsey Holdings, Inc., a Delaware corporation.

"**Ramsey Industries**" means Ramsey Industries, Inc., an Oklahoma corporation.

"**Ramsey LLC**" means Ramsey Industries, LLC - the entity created pursuant to and by virtue of Section 4.02 of the Plan.

"**Ramsey Winch**" means Ramsey Winch Company, an Oklahoma corporation.

"**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder thereof so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim; *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"**Rejection Claims**" means the Claims arising from the Debtor(s)' rejection of any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code.

"**Reorganized Debtors**" means the Debtors on and after the Effective Date, provided such Debtor(s) continue to have a corporate existence after the Effective Date.

"**Reorganized Ramsey Holdings**" means Ramsey Holdings as revested with the property of its Estate on and after the Effective Date.

"**Restated Corporate Documents**" means the amended and restated certificates of incorporation and bylaws (or any other applicable organizational documents) of the Reorganized Debtors in effect on the Effective Date. The Restated Corporate Documents of Reorganized Ramsey Holdings shall be substantially in the form to be included in the Plan Supplement.

"**Schedules**" means, collectively, the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in the Chapter 11 Cases, pursuant to Section 521 of the Bankruptcy Code, Fed. R. Bank. P 1007-1009, and Form 6 of the Official and Procedural Bankruptcy Forms, initially Filed on January 15, 2010, and amended February 15, 2010.

"**Secured Claim**" means a Claim that is secured by a security interest in or Lien upon property, or the proceeds of the sale of such property, in which the Debtors have an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such interest or lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors or Reorganized Debtors and the Holder of such Claim.

"**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

"**Series A Equity Interests**" means the equity interests in Ramsey LLC to be issued to the Holders of Allowed Class 5 Claims, which shall constitute 72.00% of the New Equity Interests of Ramsey LLC. The Series A Equity Interests shall be issued pursuant to, and with the rights and obligations set forth in Section 4.03 of the Plan and the LLC Agreement.

"**Series B Equity Interests**" means the equity interests in Ramsey LLC to be issued to the Holders of Allowed Class 6 Claims which shall constitute 13.50% of the New Equity Interests of Ramsey LLC. The Series B Equity Interests shall be issued pursuant to, and with the rights and obligations set forth in, Section 4.03 of the Plan and the LLC Agreement.

"**Series C Equity Interests**" means the equity interests in Ramsey LLC to be issued to the holders of Allowed Class 10 Interests, which shall constitute 4.50% of the New Equity Interests of Ramsey LLC. The Series C Equity Interests shall be issued

pursuant to, and with the rights and obligations set forth in, Section 4.03 of the Plan and the LLC Agreement.

"**Series D Equity Interests**" means the equity interests to be issued pursuant to the Management Incentive Plan which shall constitute 10.0% of the New Equity Interests of Ramsey LLC. The Series D Equity Interests shall be issued pursuant to, and with the rights and obligations set forth in, Section 4.03 of the Plan, the LLC Agreement and the Management Incentive Plan.

"**Setoff Claim**" means a Claim of a Holder that has a valid right of setoff with respect to such Claim, which right is enforceable under Section 553 of the Bankruptcy Code as determined by a Final Order or as agreed in writing by the Debtors, to the extent subject to such right of setoff.

"**Sponsor**" means Gridiron Capital Corporation.

"**Stock Options**" means the outstanding options to purchase Old Common Stock, if any, as of the Petition Date.

"**Subordinated Notes**" means those four 15.0% Senior Subordinated Promissory Notes, due 2014, in the aggregate original principal amount of $22,300,000, made and issued by the Borrowers and/or Ramsey Holdings in favor of the Junior Lenders.

"**Substantial Contribution Claim**" means a claim for compensation or reimbursement of costs and expenses incurred in making a substantial contribution in the Chapter 11 Cases pursuant to Sections 503(b)(3) or (4) of the Bankruptcy Code.

"**Swap Agreements**" mean that (i) certain interest rate swap agreement dated June 13, 2007 by and among the Borrowers (except for Eskridge) and CIT Group, Inc, and (ii) certain interest rate swap agreement dated January 31, 2008 by and among the Debtors and CIT Lending Services Corporation, as each such agreement may have been subsequently modified, amended, or supplemented.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Tax Refund Date**" means the date that the Debtors receive the tax refund described in Section 13.01(b)(viii) of the Disclosure Statement.

"**Twenty-Day Claims**" means those Claims for the value of goods received by the Debtors in the ordinary course of business within the 20 days prior to the Petition Date, as provided for in Section 503(b)(9) of the Bankruptcy Code.

"**Unimpaired**" means, with reference to a Claim or Interest that is not Impaired.

"**Unsecured Claim**" means any claim against the Debtors that is not a(n) Secured Claim (Class 1 and 2), Administrative Claim, Priority Tax Claim, Other Priority Claim, Unsecured Deficiency Claim, Junior Lender Claim, or Intercompany Claim.

"**Unsecured Deficiency Claim**" means the difference between the face amount of the Prepetition Senior Facility Claims and the value of the Collateral securing the Prepetition Senior Facility Claims, which shall constitute an Allowed Claim under the Plan in the amount of $24,046,300.

"**Voting Record Date**" means the date established in a Court Order approving the Disclosure Statement, as of which the identification of Holders of Claims and Interests shall be determined for purposes of voting on this Plan.

"**Warrants**" means the outstanding warrants to purchase Old Common Stock, if any, as of the Petition Date.

## ARTICLE II

## UNCLASSIFIED CLAIMS

In accordance with Sections 1123(a)(1), 507(a)(2) and 507(a)(8) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof.  These unclassified Claims are treated as follows:

**2.01   Administrative Claims.**

Except as otherwise provided for herein, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (c) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

**2.02   Priority Tax Claims.**

Pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and owing under applicable non-bankruptcy law, or in the ordinary course of business; or (c) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

## ARTICLE III

## CLASSIFIED CLAIMS AND INTERESTS

**3.01    Classification Scheme.**

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, confirmation and distribution pursuant to this Plan and Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

Pursuant to Section 4.03(a) below, the Plan provides for the consolidation of the Estates into a single Estate for all purposes associated with Confirmation and consummation of the Plan. As a result of such consolidation, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

All Claims (except for Administrative Claims and Priority Tax Claims - which are not classified pursuant to Section 1123(a)(1) of the Bankruptcy Code) are classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Prepetition Senior Facility Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Unsecured Deficiency Claims | Impaired | Entitled to Vote |
| 6 | Junior Lender Claims | Impaired | Entitled to Vote |
| 7 | Administrative Convenience Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 8 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 10 | Parent Equity Interests | Impaired | Entitled to Vote |

**3.02    Voting; Presumptions.**

      (a)    Acceptance by Impaired Classes.

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An

Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

(b)     Voting Presumptions.

Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.  Claims and Interests in Impaired Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

(c)     Cram Down.

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (i) seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with Article IX of the Plan.  With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

**3.03    Unimpaired Classes.**

(a)     Class 2: Other Secured Claims.

Class 2 consists of all Secured Claims against the Debtors other than Claims in Class 1. For purposes of the Plan, each Allowed Other Secured Claim will be deemed a separate subclass. Each Holder of an Allowed Class 2 Claim will, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 2 Other Secured Claim: (i) at the Debtors' option, either have the property that serves as Collateral for its Claim returned or have its Claim cured and Reinstated within the meaning of Section 1124(2) of the Bankruptcy Code; or (ii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

(b)     Class 3:  Other Priority Claims.

Class 3 consists of all Other Priority Claims.  The legal, equitable and contractual rights of the Holders of Allowed Class 3 Claims shall be unaltered by the Plan.  Each Holder of an Allowed Class 3 Claim, will, in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Claim:  (i) to the extent such claim is due and owing on the Effective Date, have such Allowed Claim paid in full, in Cash, on the Distribution Date; (ii) to the extent such Allowed Claim is not due and owing on the Effective Date, be paid in full, in Cash, in

accordance with the terms of any agreement between the parties, or as may be due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (iii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

      (c)     <u>Class 7:  Administrative Convenience Claims</u>.

Class 7 consists of all Administrative Convenience Claims.  The legal, equitable and contractual rights of the Holders of Allowed Class 7 Claims shall be unaltered by the Plan.  Each Holder of an Allowed Class 7 Claim, will, in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Claim:  (i)  have such Allowed Claim paid in full, in Cash, on the Distribution Date; or (ii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

      (d)     <u>Class 9:  Intercompany Interests</u>.

Class 9 consists of all Intercompany Interests.  On the Effective Date, each Class 9 Interest shall be Reinstated.

**3.04   <u>Impaired Classes of Claims</u>.**

      (a)     <u>Class 1:  Prepetition Senior Facility Claims</u>.

Class 1 consists of all Claims against the Debtors secured by and to the extent of the value (as of the Petition Date) of the Collateral securing such Claims directly or indirectly arising from or under, or relating in any way to, the Prepetition Senior Credit Documents. On the Effective Date, each Holder of an Allowed Class 1 Claim shall, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 1 Claim, receive the following: (i) its Pro Rata Share of the Exit Term Loan; and (ii) payment of the Administrative Agent's fees and expenses as detailed in Section 4.03(d) hereof.

      (b)     <u>Class 4:  General Unsecured Claims</u>.

Class 4 consists of all General Unsecured Claims, including all outstanding trade and vendor Claims, and all other Unsecured Claims against the Debtors.  Each Holder of an Allowed Class 4 Claim, shall receive, in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Claim, 90% of such Allowed Claim ("Distribution") paid in installments as follows:  50% of such Distribution on the Distribution Date, and the balance of such Distribution in equal monthly installments on the fifteenth (15th) day of each of the following twelve (12) calendar months.

      (c)     <u>Class 5:  Unsecured Deficiency Claims</u>.

Class 5 consists of the Unsecured Deficiency Claims.  On the Effective Date, each Holder of an Allowed Class 5 Claims shall, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 5 Claim, receive its Pro Rata Share of the Series A Equity Interest.

(d)    <u>Class 6: Junior Lender Claims</u>.

Class 6 consists of the Junior Lender Claims.  The Holders of Allowed Class 6 Claims shall receive, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 6 Claims, (i) on the Effective Date, their Pro Rata share of the Series B Equity Interests and (ii) payment of the Junior Lenders' fees and expenses as detailed in Section 4.03(d) hereof.

(e)    <u>Class 8: Intercompany Claims</u>.

Class 8 consists of all Intercompany Claims.  No property will be distributed to or retained by Holders of Class 8 Intercompany Claims and such Intercompany Claims shall be deemed cancelled and extinguished on the Effective Date.  Each Holder of a Class 8 Claim is deemed to reject the Plan.

(f)    <u>Class 10: Parent Equity Interests</u>.

Class 10 consists of all Parent Equity Interests.  The Holders of Allowed Class 10 Interests shall receive, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 10 Interests, and on account of Sponsor's waiver of all Claims against the Debtors, including, but not limited to, all management and other fees (except fees and expenses described in subsection (ii) of this Section 3.04(f), (i) on the Effective Date, their Pro Rata share of the Series C Equity Interests and (ii) payment of Sponsor's fees and expenses as detailed in Section 4.03(d) hereof.  All Class 10 Interest Holders shall surrender any shares or other evidence of their Parent Equity Interests, and such Parent Equity Interests shall be cancelled, as of the Effective Date.

**3.05    <u>Special Provision Regarding Unimpaired Claims</u>.**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.

**3.06    <u>Determination Dates</u>.**

(a)    <u>Voting</u>.  For purposes of voting on this Plan, a Claim or Interest is in a particular Class only to the extent that it is an Allowed Claim or Interest in that Class, and has not been paid, released, or otherwise satisfied, before the Voting Record Date.

(b)    <u>Distribution and Treatment</u>.  For purposes of distribution and other treatment under this Plan, a Claim or Interest is in a particular Class, only to the extent that it is an Allowed Claim or Interest in that Class, and has not been paid, released, or otherwise satisfied before the Distribution Record Date.

## ARTICLE IV

## IMPLEMENTATION OF THE PLAN

**4.01    Continued Corporate Existence.**

Following the Effective Date, the Reorganized Debtors shall continue to exist as separate corporate entities, in accordance with applicable non-bankruptcy law and pursuant to their Corporate Documents in effect prior to the Effective Date, except to the extent that such Corporate Documents are amended by the terms of this Plan or the Restated Corporate Documents.

**4.02    Corporate Action.**

    (a)    Cancellation of Prepetition Credit Documents, Subordinated Notes and Parent Equity Interests.

On the Effective Date, except as otherwise provided for herein, (i) the Prepetition Credit Documents, Subordinated Notes, Parent Equity Interests and any other note, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors related to the Prepetition Credit Documents, Subordinated Notes, or Parent Equity Interests shall be cancelled, and (ii) the obligations of the Debtors under any agreements governing the Prepetition Senior Facility, Subordinated Notes, Parent Equity Interests and any other note, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors related to the Prepetition Senior Facility, Subordinated Notes or Parent Equity Interests shall be discharged; *provided*, *however*, that each agreement that governs the rights of the Holder of a Prepetition Senior Facility Claim, Junior Lender Claim or Other Secured Claim that is administered by an agent shall continue in effect solely for the purposes of (a) allowing such agent to make the distributions to be made on account of such Allowed Claims under the Plan as provided in Article III hereof and (b) permitting such agent to maintain any rights or liens it may have for fees, costs and expenses under such agreement; and *provided*, *further*, that the provisions of clause (ii) of this paragraph shall not affect the discharge of the Debtors' liabilities under the Bankruptcy Code and the Confirmation Order or result in any expense or liability to the Reorganized Debtors.

    (b)    Restated Corporate Documents.

The Corporate Documents of Ramsey Holdings shall be amended and restated as necessary to satisfy the provisions of the Plan.  Reorganized Ramsey Holdings shall own, directly or indirectly, the Equity Securities of each of the other Reorganized Debtors.  The Restated Corporate Documents of Ramsey Holdings shall be filed as part of the Plan Supplement. On the Effective Date or as soon thereafter as is practicable, Reorganized Ramsey Holdings shall file with the Secretary of the State of Delaware an amended certificate of incorporation pursuant to Section 242 of Delaware General Corporation Law.

(c)    Creation of Ramsey LLC.

The New Entity Documents of Ramsey LLC shall include those provisions necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, (x) a provision prohibiting the issuance of non-voting equity securities, and (y) if applicable, a provision as to the classes or series of securities issued pursuant to the Plan or thereafter possessing voting power, for an appropriate distribution of such power among such classes or series, including, in the case of any class or series of equity securities having a preference over another class or series of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class or series in the event of default in the payment of such dividends. Ramsey LLC shall own 100% of the Equity Securities of Reorganized Ramsey Holdings. Any holder of Series A Equity Interest or Series B Equity Interests may, at its sole option, elect to convert all or any portion of such Series A Equity Interests or Series B Equity Interests into non-voting securities, which non-voting securities, except for the absence of voting rights, shall have the same economic and other rights of Series A Equity Interests or Series B Equity Interests, as the case may be. The New Entity Documents of Ramsey LLC shall be filed as part of the Plan Supplement. On the Effective Date or as soon thereafter as is practicable, Ramsey LLC shall file with the Secretary of the State of Delaware its certificate of formation pursuant to Section 18-201 of the Delaware Limited Liability Company Act, and the members of Ramsey LLC will execute the LLC Agreement.

(d)    Other General Corporate Matters.

On or after the Effective Date, the Debtors and/or Reorganized Debtors shall take such action as is necessary under the laws of the State of Delaware, State of Oklahoma, federal law and other applicable law to effect the terms and provisions of the Plan. Without limiting the foregoing, the issuance of the New Equity Interests, the election and appointment of directors or officers, adoption and implementation of the Management Incentive Plan and any other matter involving the corporate structure of the Reorganized Debtors, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law or Section 118 of Oklahoma Corporation Act (or the laws of each state pursuant to which a Reorganized Debtor is organized) without requiring any further action by the shareholders or directors of the Debtors and/or Reorganized Debtors.

**4.03    Restructuring Transactions.**

(a)    Consolidation.

Pursuant to Bankruptcy Code Section 1123(a)(5)(C), the Plan combines all of the Debtors' Estates into a single consolidated Estate for all purposes associated with Confirmation and consummation of the Plan, including but not limited to voting and distribution. Accordingly, on and after the Effective Date, all assets and liabilities of the Debtors shall be treated as merged into the Estate of Ramsey Holdings for all purposes associated with Confirmation and consummation of the Plan, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as

well as any joint and several liability of any Debtor with respect to any obligation of another Debtor shall be treated as one collective obligation of the Debtors.

Consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or in connection with contracts or leases assumed or entered into during the Chapter 11 Cases. Any alleged defaults under any applicable agreement with the Debtors or Reorganized Debtors arising from consolidation under the Plan shall be deemed cured as of the Effective Date.

      (b)    <u>New Securities</u>.

          (i)    *Authorization*.

As of the Effective Date, Ramsey LLC is authorized to issue the New Equity Interests without further act or action under applicable law, regulation, order or rule.

          (ii)    *Issuance*.

The Confirmation Order shall provide that, pursuant to Section 1145 of the Bankruptcy Code, the issuance of the New Equity Interests shall be exempt from the registration requirements of the Securities Act, as amended, and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities; *provided*, that if the issuance of any of the New Equity Interests do not qualify for the exemption under Section 1145 of the Bankruptcy Code, the New Equity Interests will be issued in a manner which qualifies for another available exemption, whether as a private placement under Rule 506 under the Securities Act in which securities are issued only to "accredited investors," as such term is defined in Rule 501 under the Securities Act, or otherwise. In the event the issuance of the New Equity Interests do not qualify for the exemption from securities laws under Section 1145 of the Bankruptcy Code and the Debtors elect to pursue an exemption under Rule 506 under the Securities Act for securities issued only to "accredited investors," then each Holder of an Allowed Class 1 Claim may be required, as a condition to receiving such New Equity Interests, to provide the Debtors with a representation, in form and substance reasonably satisfactory to the Debtors, that it is an "accredited investor" and such other representations as the Debtors may reasonably request in order to determine that such shares of New Equity Interests were offered and issued in a private placement to "accredited investors" only under Rule 506 under the Securities Act. All securities issued pursuant to the Plan will be deemed issued as of the Effective Date regardless of the date actually distributed.

          (iii)    *LLC Agreement*.

Without limiting the effect of Section 1145 of the Bankruptcy Code, upon the Effective Date, the LLC Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each Holder of New Equity Interests shall, upon the Effective Date, be bound by the LLC Agreement irrespective of whether such party is a signatory thereto.

(iv)   *Listing.*

Ramsey LLC shall not be obligated to (a) list the New Equity Interests on a public securities exchange or (b) register the New Equity Interests under the Securities Act or Exchange Act. In addition, the New Equity Interests shall be subject to certain restrictions on transfer to limit the number of record holders of New Equity Interests, to ensure that Ramsey LLC is not required to register the New Equity Interests under the Securities Act or Exchange Act.

(c)   Exit Credit Facilities.

On the Effective Date, the Reorganized Debtors (except Reorganized Ramsey Holdings), as borrowers, and Reorganized Ramsey Holdings, as guarantor, shall enter into the Exit Credit Facilities. The Reorganized Debtors and Ramsey LLC are authorized to use the Exit Credit Facilities for any purpose permitted thereunder, including to (a) refinance amounts outstanding on the Effective Date under the Prepetition Senior Credit Agreement, (b) make other payments required to be made on the Effective Date or Distribution Date, and (c) operate their business.

(d)   Fees and Expenses.

The fees and expenses of the following parties-in-interest shall be paid in the amounts, at the times, and in the manner indicated:

(i)   *Debtors.*

To the extent allowed by the Court, the following Non-Ordinary Course Administrative Claims shall be paid, subject to the stated limitations, if any:

(A)   The Debtors' general bankruptcy counsel, GableGotwals, shall be paid the lesser of $787,500 or 100% of its allowed fees in two equal installments on (x) the later of the Distribution Date or within five days after such fees and expenses are allowed by the Court (100% of allowed expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date, (II) the Tax Refund Date, provided that if such fees and expenses have not been allowed by either date, within five days after such fees and expenses are allowed by the Court.

(B)   The Debtors' other Professionals employed in these Chapter 11 Cases, including David R. Payne & Associates, Koehler & Associates, Inc., and Grant Thornton, shall be paid the full amount of their allowed fees and expenses when and as permitted by the Court.

(C)   The Debtors shall pay the allowed fees and expenses of recruitment consultants in connection with their identification of independent members of the New Boards when and as permitted by the Court.

(ii)    *Prepetition Senior Lenders.*

The fees and expenses of the Administrative Agent and Exit Agent incurred on or prior to the Effective Date shall be paid by the Debtors, subject to the stated limitations:

(A)    The Debtors shall pay 90% of the fees of the Administrative Agent's and Exit Agent's counsel, Kaye Scholer LLP, in two equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

(B)    The Debtors shall pay the reasonable fees and expenses of Administrative Agent's and Exit Agent's local counsel, McAfee & Taft, in two equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

(C)    The Debtors shall pay the Administrative Agent's and Exit Agent's financial consultant, Richter Consulting, the lesser of $685,967 or 100% of its actual fees in two equal installments on (x) the Distribution Date (100% of expenses shall be paid on this date) and (y) a date not later than the earlier of (I) 30 days following the Distribution Date or (II) the Tax Refund Date.

(iii)    *Junior Lenders.*

The fees and expenses of the Junior Lender Agent shall be paid by the Debtors, in an amount not to exceed $283,726, as follows: (x) 50% on the 120th day following the Distribution Date, and (y) the remainder in 7 equal monthly installments commencing on the date that is 150 days following the Distribution Date.

(iv)    *Sponsor.*

The fees and expenses of the Sponsor shall be paid by the Debtors, in an amount not to exceed $486,274, as follows (x) 50% the 120th day following the Distribution Date, and (y) the remainder in 7 equal monthly installments commencing on the date that is 150 days following the Distribution Date.

(v)    *Creditors' Committee.*

The Allowed fees and expenses of the Professionals of the Committee shall be paid by the Debtors when and as permitted by the Court.

(vi)    *Other.*

Directors Expenses shall be payable on the Effective Date up to a maximum amount of $50,000. Directors & Officers Insurance shall be paid by the Debtors and maintained in accordance with past standards, *provided that* the Debtors shall not incur in

excess of $125,000 for tail insurance and such amount shall represent a one-time expenditure.

**4.04   Board of Directors.**

Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed initial director of Ramsey LLC (and, to the extent such Person is an insider of the Debtors, the nature of any compensation to such Person) and the identical Boards of Directors for each of the Reorganized Debtors shall be disclosed in the Plan Supplement (if known by the date the Plan Supplement is filed). The initial Board of Directors of Ramsey LLC and each of the Reorganized Debtors (collectively, the "New Boards") shall consist of seven members: (i) four directors shall be Independent Directors (as defined in the Plan Term Sheet) designated collectively by the Consenting Lenders, (ii) one director shall be designated by the Junior Lenders, (iii) one director shall be designated by the Sponsor, and (iv) one director shall be the Chief Executive Officer of Ramsey LLC. The New Boards shall serve for an initial term of two (2) years. Thereafter, the New Boards will be elected in accordance with the New Entity Documents of Ramsey LLC and applicable non-bankruptcy law.

**4.05   Officers.**

On the Effective Date, the following existing officers of Debtors shall be retained as officers of Reorganized Debtors that continue to exist thereafter, and shall continue to serve until such time as they may resign, be removed or be replaced. Accordingly, the officers of Reorganized Debtors shall be the following as of the Effective Date (these individuals shall also serve as the officers of Ramsey LLC):

| | |
|---|---|
| John R. Celoni, Jr. | President & Chief Executive Officer |
| Don Helms | Chief Financial Officer, Treasurer and Secretary |
| Michael Barber | Chief Operating Officer |

**4.06   Management Incentive Plan.**

On or after the Effective Date, the New Boards of the Reorganized Debtors shall adopt the Management Incentive Plan.

**4.07   Other Documents and Actions.**

The Debtors and Reorganized Debtors may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan Term Sheet and the Plan.

**4.08   Revesting of Assets.**

Except as otherwise set forth herein, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, all property of the Estates shall revest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances and other Interests. Allowed

Intercompany Interests shall be Reinstated pursuant to Section 3.03(d) hereof, and the legal, equitable and contractual rights to which the Holders of such Allowed Intercompany Interests are entitled shall remain unaltered. From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire and dispose of property and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, the Debtors may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

**4.09    Preservation of Rights of Action; Settlement.**

Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code: (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in the Reorganized Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor the Reorganized Debtors waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Estates. The Reorganized Debtors may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors.

**4.10    Effectuating Documents; Further Reorganization Transactions.**

The chairman of the board of directors, president, chief financial officer, manager, or any other appropriate officer of the Debtors or, after the Effective Date, the Reorganized Debtors or Ramsey LLC, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary of the Debtors or, after the Effective Date, the Reorganized Debtors, shall be authorized to certify or attest to any of the foregoing actions.

**4.11    Exemption From Certain Transfer Taxes.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer from the Debtors to the Reorganized Debtors, Ramsey LLC or any other Person or entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such

tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 4.12    Employee and Retiree Benefits

On and after the Effective Date, the Reorganized Debtors may honor, in the ordinary course of business, any Benefit Plan except to the extent such Benefit Plan was modified by an order of the Court on or prior to the Effective Date; *provided, however,* that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

For the avoidance of doubt, (a) all claims of the Debtors' retirees that constitute "retiree benefits" within the meaning of Bankruptcy Code Section 1114(a) (the "Retiree Benefits") shall continue to be paid in accordance with applicable law and certain operative agreements, including without limitation, (i) the *Merger Agreement among Ramsey Acquisition Corp. and Ramsey Industries, Inc. and all of the Shareholders of Ramsey Industries, Inc.* dated October 27, 1999; and (ii) the *Employment Agreement* by and between Ramsey Industries, Inc. and Robert F. Heffron dated April 5, 2007; (b) each of Reorganized Auto Crane and Reorganized Ramsey Winch will continue to sponsor and maintain its Defined Benefit Pension Plan in accordance with its terms and applicable law; and (c) each of Reorganized Ramsey Industries, Reorganized Auto Crane and Reorganized Ramsey Winch shall continue to honor its obligations under the *Management Security Plan of Ramsey Industries, Inc. and Subsidiaries,* as amended (the "MSP") in accordance with its terms and applicable law.    Notwithstanding the foregoing, each Reorganized Debtor reserves its right, if any, after the Effective Date, to terminate, amend or freeze the applicable Retiree Benefits and/or the Pension Plans in accordance with their terms and applicable law

With respect to the Defined Benefit Pension Plans, they shall remain in place as provided in this Section 4.12. Upon confirmation of the Plan, the Reorganized Debtors shall satisfy the minimum funding standards pursuant to section 412 of the Tax Code and section 1082 of Title 29 of the United States Code and administer the Defined Benefit Pension Plans in accordance with their terms and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the Tax Code. Nothing contained herein or in the Plan shall be construed as discharging, releasing or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, from any liability imposed under ERISA, the Bankruptcy Code, or any related law or regulatory provision with respect to the Defined Benefit Pension Plans or the PBGC. Notwithstanding any provision of the Plan or the Confirmation Order, the PBGC and the Defined Benefit Pension Plans shall not be enjoined or precluded from enforcing such liability.

On the Effective Date, (a) all filed proofs of claim with respect to Retiree Benefits shall be deemed withdrawn, (b) all filed proofs of claim filed by PBGC with respect to the Pension Plans shall be deemed withdrawn, (c) all participant benefits or distributions held by Bank of

Oklahoma, N.A., as trustee ("MSP Trustee") of the trust created by the MSP, as provided in the *Interim Order on Motion for Abatement of Distributions under Management Security Plan* (Doc. No. 295), shall be remitted by the MSP Trustee to the MSP participants and immediately thereafter all filed proofs of claim with respect to the MSP shall be deemed withdrawn.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.01    Distributions For Claims and Interests Allowed as of Effective Date.**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims and Interests that are Allowed Interests as of the Effective Date shall be made on the Distribution Date, or as soon thereafter as practicable.  The New Equity Interests to be issued under this Plan shall be deemed issued as of the Effective Date regardless of the date on which the shares or interests are actually distributed.

**5.02    Interest on Claims.**

Unless otherwise specifically provided by this Plan, the Confirmation Order, any other order of the Court, or by applicable bankruptcy law, post-petition interest shall not accrue and shall not be paid on Allowed Claims when due under the contract, agreement, or other instrument governing the terms and conditions of the obligation comprising such Allowed Claim.

**5.03    Disbursing Agent.**

The Disbursing Agent shall make all distributions required under this Plan *except* (i) distributions to the Holders of Allowed Claims in Classes 1 and 5, which distributions shall be deposited with the Administrative Agent, who shall promptly deliver such distributions to the Holders of such Claims in accordance with the provisions of this Plan and the Prepetition Senior Credit Documents and (ii) distributions to the Holders of Allowed Claims in Class 6, which distributions shall be deposited with the Junior Lender Agent, who shall promptly deliver such distributions to the Holders of such Claims in accordance with the provisions of this Plan and the Subordinated Notes.

If the Disbursing Agent is an independent third party designated in the Confirmation Order to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  If so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

5.04  **Record Date For Distributions.**

At the close of business on the Distribution Record Date, the transfer ledgers for the Prepetition Senior Facility Claims, Junior Lien Claims, and Old Common Stock shall be closed, the claims register for transfers of Claims and Interests pursuant to Bankruptcy Rule 3001(e) will also be closed and there shall be no further changes in the record holders of the Prepetition Senior Facility Claims, Junior Lender Claims and Old Common Stock. None of the Reorganized Debtors, the Disbursing Agent, the Administrative Agent, or the Junior Lender Agent shall have any obligation to recognize any transfer of such Prepetition Senior Facility Claims, Junior Lender Claims or Old Common Stock occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those Holders stated on the applicable transfer ledgers as of the close of business on the Distribution Record Date.

5.05  **Means of Cash Payment.**

Cash payments made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

5.06  **Delivery of Distributions.**

Distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent or Administrative Agent, as the case may be, (a) at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or Interest is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent, at the addresses contained in the official records of such agent, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities properly remitted to the Debtors. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent or the appropriate agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions made through the Disbursing Agent or agent shall be returned to the Reorganized Debtors until such distributions are claimed. All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**5.07**   **Claims Paid or Payable by Third Parties.**

(a)   Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

(b)   Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)   Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

**5.08**   **Fractional Dollars; De Minimis Distributions.**

Any other provision of the Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded up. The Disbursing Agent or any agent, as the case may be, shall not make any payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to such Disbursing Agent or agent, as the case may be.

**5.09    Withholding and Reporting Requirements.**

In connection with this Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**5.10    Calculation of Distribution Amounts of New Equity Interests.**

No fractional shares of New Equity Interests shall be issued or distributed under the Plan by the Reorganized Debtors, the Disbursing Agent, or the Administrative Agent. Each Person entitled to receive New Equity Interests will receive the total number of whole shares to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of a share, the actual distribution of shares of such New Equity Interests shall be rounded to the next higher or lower whole number as follows: (a) fractions ½ or greater shall be rounded to the next higher whole number, and (b) fractions of less than ½ shall be rounded to the next lower whole number. The total number of shares of New Equity Interests to be distributed to the Holders of Claims in Classes 5 and 6, and Interests in Class 10, shall be adjusted as necessary to account for the rounding provided herein. No consideration shall be provided in lieu of fractional shares rounded down.

**ARTICLE VI**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.01    Assumption/Rejection.**

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors *unless* such executory contract or unexpired lease: (a) is identified in a Schedule to be included in the Plan Supplement as a contract or lease being rejected pursuant to the Plan; or (b) is the subject of a motion to reject filed on or before the Confirmation.

**6.02    Pass-Through.**

Any rights or arrangements necessary or useful to the operation of the Debtors' business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory contracts not assumable under Section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for the Debtors and the Debtors' counterparty's benefit, unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

**6.03**  <u>**Assumed Executory Contracts and Unexpired Leases**</u>.

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

**6.04**  <u>**Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**</u>.

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.

**6.05**  <u>**Assumed Contracts and Leases, and Leases Entered After Petition Date**</u>.

Leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

**6.06**  <u>**Reservation of Rights**</u>.

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**6.07**    **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Section 365(d)(4) of the Bankruptcy Code.

**6.08**    **Cure Costs.**

Except to the extent different treatment is agreed to among the parties, any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the Debtors' option, by the payment of Cash or distribution of other property as necessary to cure any defaults. If there is a dispute regarding (i) the nature or amount of any cure, (ii) the Debtors' ability or the ability of the Debtors' assignees to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS**

**7.01**    **Objections to Claims.**

From and after the Effective Date, the Debtors and Reorganized Debtors may settle or compromise any Contested Claim/Interest without approval of the Bankruptcy Court. The Debtors also reserve the right to resolve any Contested Claim/Interest outside the Bankruptcy Court under applicable governing law.

**7.02**    **Estimation of Claims.**

Any Debtor or Reorganized Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**7.03    No Distributions Pending Allowance.**

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Contested Claim/Interest unless and until all objections to such Contested Claim/Interest have been settled or withdrawn or have been determined by Final Order, and the Contested Claim/Interest, or some portion thereof, has become an Allowed Claim or Interest.

**7.04    Distribution Reserve.**

The Disbursing Agent shall withhold the Distribution Reserve from the Cash or other property (other than the Exit Term Loan to be distributed to the Holders of Allowed Claims in Class 1 and the New Equity Interests to be distributed to the Holders of Allowed Claims or Interests in Classes 5, 6 and 10) to be distributed under the Plan. As to any Contested Claim/Interest, upon a request for estimation by the Debtors, the Bankruptcy Court shall determine what amount is sufficient to withhold as the Distribution Reserve. The Debtors may request estimation for every Contested Claim/Interest that is unliquidated and the Disbursing Agent shall withhold the Distribution Reserve based upon the estimated amount of such Claim or Interest as set forth in a Final Order. No holder of a Contested Claim/Interest shall be entitled to a distribution in excess of the Debtors' estimate of such Contested Claim/Interest unless required by Final Order. If the Debtors elect not to request an estimation from the Bankruptcy Court with respect to a Contested Claim/Interest that is liquidated, the Disbursing Agent shall withhold the Distribution Reserve based upon the Face Amount of such Claim or Interest.

**7.05    Distributions After Allowance.**

The Reorganized Debtors or the Disbursing Agent, as the case may be, shall make payments and distributions from the Distribution Reserve to each holder of a Contested Claim/Interest that has become an Allowed Claim or Interest in accordance with the provisions of the Plan governing the Class of Claims or Interests to which such holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Contested Claim/Interest becomes a Final Order, the Disbursing Agent shall distribute to the holder of such Claim or Interest the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim or Interest been allowed on the Distribution Date. After a Contested Claim/Interest is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Contested Claim/Interest, if any, shall become property of the Reorganized Debtors.

**7.06    Prior Payment of Claims.**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

**7.07**   <u>Compliance with Tax Requirements/Allocations.</u>

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.   The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

**ARTICLE VIII**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**8.01**   <u>Conditions Precedent to Confirmation.</u>

The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors, the Administrative Agent, the Exit Agent, the Junior Agent and the Sponsor, which shall include a finding of fact that the Debtors, the Administrative Agent, the Prepetition Senior Lenders, the Exit Agent, the Exit Lenders, the Junior Lender Agent, the Junior Lenders, the Sponsor and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Section 1125(e) of the Bankruptcy Code and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

The Debtors shall have arranged for credit availability under the Exit Revolving Facility to provide the Reorganized Debtors and their subsidiaries with their working capital needs.

**8.02**   <u>Conditions Precedent to Consummation.</u>

The following are conditions precedent to the occurrence of the Effective Date, each of which must be (x) satisfied or (y) waived in accordance with Section 8.04 below:

(a)   The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Administrative Agent, on behalf of the Consenting Lenders, and become a Final Order and shall, *inter alia*, provide that the Prepetition Senior Facilities Claims and the Junior Lender Claims are Allowed Claims.

(b)   The Exit Credit Agreement shall have been executed and delivered by all parties thereto, and all conditions precedent to consummation thereof shall have been waived or satisfied

in the manner permitted thereunder, and funding pursuant to the Exit Credit Facilities shall have occurred.

(c)     The following agreements, in form and substance reasonably acceptable to the Debtors or Reorganized Debtors, as applicable, the Administrative Agent, on behalf of the Consenting Lenders, the Exit Agent, the Junior Lender Agent and the Sponsor, shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied:

       (i)     Restated Corporate Documents;

       (ii)     New Entity Documents; and

       (iii)     Management Incentive Plan.

(d)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(e)     There shall not be in effect on the Effective Date any (i) order entered by a court or (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity or (ii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(f)     No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall remain pending.

(g)     The Effective Date shall have occurred on or prior to the 30th day after the Confirmation Date.

(h)     To the extent provided for in Section 4.03(d) hereof, the Debtors shall reimburse all reasonable costs and expenses, including all fees and expenses, of the Administrative Agent, and the Exit Agent.

(i)     Either (A) the issuance of all shares or interests of New Equity Interests to be issued under the Plan shall qualify for the exemption from securities laws under Section 1145 of the Bankruptcy Code, (B) the Debtors shall have received from each Holder of an Allowed Claim in Class 5 and Class 6, and each Holder of an Allowed Interest in Class 10, from whom it shall have so requested, a representation in form and substance reasonably satisfactory to the Debtors that such Person is an "accredited investor" and such other representations as the Debtors may reasonably request in order to determine that all shares or interests of New Equity Interests were offered and issued in a private placement to "accredited investors" only under Rule 506 under the Securities Act, or (C) the Debtors reasonably determine that the issuance of all shares or interests of New Equity Interests to be issued under the Plan is otherwise exempt from registration.

## 8.03   **Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

{865422;9}                                   35

**8.04**   **Waiver of Conditions.**

Each of the conditions set forth in Section 8.02 hereof may be waived in whole or in part by written consent of the Debtors, the Administrative Agent, on behalf of the Consenting Lenders, the Exit Agent, the Junior Lenders, and the Sponsor, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized Debtors).  The failure of the Debtors, the Reorganized Debtors, the Administrative Agent, the Exit Agent, the Junior Lenders, or the Sponsor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE IX

## AMENDMENTS AND MODIFICATIONS

The Debtors, with the consent if the Administrative Agent, on behalf of the Consenting Lenders, Exit Agent and the Junior Lenders, may alter, amend, or modify the Plan or any exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE X

## COMPROMISES AND SETTLEMENTS

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.